**THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| EIREOG INNOVATIONS LTD.<br>v.<br>CISCO SYSTEMS, INC. | Case No. 2:24-cv-00224-RWS-RSP<br>(Lead Case)<br>**JURY TRIAL DEMANDED** |
| EIREOG INNOVATIONS LTD.<br>v.<br>FORTINET, INC. | Case No. 2:24-cv-00225-RWS-RSP<br>(Member Case)<br>**JURY TRIAL DEMANDED** |
| EIREOG INNOVATIONS LTD.<br>v.<br>INTERNATIONAL BUSINESS MACHINES CORPORATION | Case No. 2:24-cv-00226-RWS-RSP<br>(Member Case)<br>**JURY TRIAL DEMANDED** |
| EIREOG INNOVATIONS LTD.<br>v.<br>PALO ALTO NETWORKS, INC. | Case No. 2:24-cv-00227-RWS-RSP<br>(Member Case)<br>**JURY TRIAL DEMANDED**<br><br>[redacted] |

**PLAINTIFF EIREOG INNOVATIONS LTD.'S MOTION TO EXCLUDE CERTAIN OPINIONS OF DR. EMMETT WITCHEL AND TO STRIKE PORTIONS OF HIS EXPERT REPORTS**

## TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. ARGUMENT .......... 2

A. The Court should exclude Dr. Witchel's purported "written description" theories rooted in whether or not aspects of the accused products are disclosed in the patent specification. .......... 2

B. The Court should exclude Dr. Witchel's opinions that mount an improper "practicing the prior art" defense, comparing prior art to the accused products rather than the patent claims. .......... 4

C. The Court should exclude Dr. Witchel's belated *Markman* theories that are unsupported by the intrinsic record. .......... 7

i. Dr. Witchel's purported requirement that the "memory controller" must perform a function in addition to a "primary function" improperly imports a limitation from examples in the specification. .......... 9

ii. Dr. Witchel's purported requirement that the "memory controller" of the asserted claims must perform an operation that would otherwise be performed by the processor core is likewise unsupported by the intrinsic record. .......... 11

iii. Dr. Witchel's purported requirement that a "decoration value" must be provided to the "memory controller" of the asserted claims improperly imports a limitation from examples in the specification. .......... 13

III. CONCLUSION .......... 15

# TABLE OF AUTHORITIES

**Cases**

*Allegan Sales, LLC v. UCB, Inc.*,
No. 2:15-cv-01001-JRG-RSP, 2016 WL 9276265 (E.D. Tex. Nov. 7, 2016)............................ 7

*Anonymous Media Research Holdings, LLC v. Samsung Elecs. Am., Inc.*,
No. 2:23-cv-00439-JRG-RSP, 2025 WL 2654103 (E.D. Tex. Sept. 16, 2025)........ 8, 11, 13, 15

*Core Wireless Licensing SARL v. LG Elecs., Inc.*,
No. 2:14-cv-911-JRG-RSP, 2016 WL 4718963 (E.D. Tex. July 12, 2016)........................... 6, 7

*Genband US LLC v. Metaswitch Networks Corp.*,
No. 2:14-cv-33-JRG-RSP, 2015 WL 12911530 (E.D. Tex. Sept. 30, 2015).............................. 7

*Guangzhou Yucheng Trading Co. v. Dbest Prods., Inc.*,
644 F. Supp. 3d 637 (C.D. Cal. 2022) .......................................................................... 2

*Huawei Tech. Co. v. T-Mobile US, Inc.*,
No. 2:16-cv-00052-JRG-RSP, 2017 WL 11638984 (E.D. Tex. Sept. 29, 2017)........................ 7

*Intellectual Ventures II LLC v. FedEx Corp.*,
No. 2:16-cv-00980-JRG, 2018 WL 10638138 (E.D. Tex. Apr. 26, 2018)................................ 6

*Kaist IP US LLC v. Samsung Elecs. Co.*,
No. 2:16-cv-1314-JRG-RSP, 2018 WL 2411772 (E.D. Tex. May 29, 2018) ............................ 8

*Liquid Dynamics Corp. v. Vaughn Co.*,
449 F.3d 1209 (Fed. Cir. 2006)............................................................................................ 8

*Maxell Ltd. v. Apple, Inc.*,
No. 5:19-cv-00036-RWS, 2020 WL 8269548 (E.D. Tex. Nov. 11, 2020)................................ 8

*Moba, BV v. Diamond Automation, Inc.*,
325 F.3d 1306 (Fed. Cir. 2003)............................................................................................ 2

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
521 F.3d 1351 (Fed. Cir. 2008)............................................................................................ 8

*Opticurrent, LLC v. Power Integrations, Inc.*,
No. 17-cv-03597-WHO, 2018 WL 6727826 (N.D. Cal. Dec. 21, 2018).................................. 6

*Pardalis Tech. Licensing, LLC v. Int'l Bus. Machs. Corp.*,
No. 2:22-cv-0452-JRG-RSP, 2024 WL 43229013 (E.D. Tex. Aug. 5, 2024)........................... 2

*Personalized Media Commc'ns, LLC v. Zynga, Inc.*,
No. 2:12-cv-00068-JRG-RSP, 2013 WL 5962812 (E.D. Tex. Nov. 7, 2013)........................ 2, 4

*Realtime Data LLC v. EchoStar Corp.*,
No. 6:17-cv-00084-JDL, 2018 WL 6271807 (E.D. Tex. Nov. 29, 2018)........................... 4, 5, 6

*Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*,
279 F.3d 1357 (Fed. Cir. 2002)........................................................................................... 4

*Thorner v. Sony Comput. Ent. Am. LLC.*,
669 F.3d 1362 (Fed. Cir. 2012)......................................................................... 10, 12, 14

*Uniloc USA, Inc. v. Microsoft Corp.*,
632 F.3d 1292 (Fed. Cir. 2011)........................................................................................... 4

**Statutes**

35 U.S.C. § 112........................................................................................................... 1, 2

**Rules**

Fed. R. Evid. 702 ..................................................................................................... 2, 6, 8

## I. INTRODUCTION

Defendants' expert, Dr. Emmett Witchel, advances three categories of improper opinions that he should be precluded from offering at trial.

First, Dr. Witchel presents "written description" opinions "under EireOg's infringement theories," in which he examines whether aspects of the ***accused products*** are described in the'777 Patent specification, which is irrelevant to the written description inquiry. He does not offer any opinions concerning whether the ***patent claims*** are adequately described in the specification, which is the proper test for determining whether Section 112's written description requirement is satisfied.

Second, Dr. Witchel likewise presents "anticipation" opinions "under EireOg's infringement theories," where he compares the prior art to the accused products to opine that the prior art contains and discloses features similar to that set forth in EireOg's infringement theories. This is nothing more than an improper "practicing the prior art" defense, which has long been rejected by the Federal Circuit.

Third, Dr. Witchel presents several "non-infringement" arguments rooted in belated claim construction proposals. The time for the *Markman* process has long since passed, Defendants did not propose any of Dr. Witchel's constructions at the *Markman* stage (or any other constructions for any claim element of the '777 Patent), and it would be improper for the Court to allow issues of pure claim construction to be heard by the jury. The Court can readily resolve these claim construction issues on this motion, as each of Dr. Witchel's proposals are unsupported by the intrinsic record of the '777 Patent and should thus be stricken.

Each of these categories of unreliable opinions would do nothing but to inject irrelevant issues into the case, confusing the jury and bringing undue prejudice to Plaintiff EireOg. EireOg

respectfully requests that the Court exclude these opinions under *Daubert* and Fed. R. Evid. 702, and strike the corresponding portions of Dr. Witchel's expert reports.

## II. ARGUMENT

### A. The Court should exclude Dr. Witchel's purported "written description" theories rooted in whether or not aspects of the accused products are disclosed in the patent specification.

It is well-settled that expert opinions and testimony that rely on or apply incorrect legal standards are unreliable and should be excluded. *See, e.g.*, *Personalized Media Commc'ns, LLC v. Zynga, Inc.*, No. 2:12-cv-00068-JRG-RSP, 2013 WL 5962812, at *2 (E.D. Tex. Nov. 7, 2013). It is also well-settled that a defendant "cannot pursue a written description argument that the accused product is not disclosed under the guise of the 'full scope' of the claims not being disclosed." *Pardalis Tech. Licensing, LLC v. Int'l Bus. Machs. Corp.*, No. 2:22-cv-0452-JRG-RSP, 2024 WL 43229013, at *2 (E.D. Tex. Aug. 5, 2024). This is because "[f]or the purposes of this requirement, the issue is not whether a specification provides an adequate description of an accused product, but whether the specification provides an adequate description of the claimed invention." *Guangzhou Yucheng Trading Co. v. Dbest Prods., Inc.*, 644 F. Supp. 3d 637, 668 (C.D. Cal. 2022) (quoting *Moba, BV v. Diamond Automation, Inc.*, 325 F.3d 1306, 1321 (Fed. Cir. 2003)).

Dr. Witchel's "written description" opinions should be excluded because they examine not whether the claimed invention is adequately described as required by Section 112, but rather whether the specification describes aspects of the accused products relevant to EireOg's infringement allegations. Indeed, the written description sections of his reports expressly state that his written description opinions are "Based on EireOg's Infringement Theories." Ex. 1 at 252 (heading E); *see* Ex. 2 at 158 (heading C). This was again confirmed at his deposition where he testified: "[I]n the context of this case and my analysis, I took a look at what EireOg's infringement

theories were and the terms that they used and then tried to see if those were supported in the written description of the patent." Ex. 3 at 139:13-20; *see also id.* at 137:16-139:12, 140:4-23, 209:4-210:20. In contrast, he was unable to identify any claim element of the asserted claims that he contends is not adequately disclosed in the specification, *id.* at 142:7-144:17, admitting that, under the proper legal standard, the asserted claims meet the written description requirement:

> Q. … [A]re you offering any opinion that there is a claim limitation of Claim 16 of the '777 patent that is not adequately described in the patent specification such that the claim is invalid under the written description requirement?
>
> A. No. I believe that the claims, as written, can be understood by a person of ordinary skill in the art.
>
> Q. You believe that the claims as written are adequately described in the specification such that a person of ordinary skill in the art would understand that the inventors were in possession of the invention?
>
> A. Yes, I believe that they -- they constitute an adequate description of the full scope of what is claimed.

*Id.* at 145:17-146:11.

Indeed, his reports are replete with examples comparing the accused products to the asserted patent specification—an incorrect written description legal analysis. For example, Dr. Witchel opines that EireOg's infringement allegations refer to instructions that "modify [the] operand size," and then opines that "there is no written support in the specification of the 777 patent that an instruction 'decoration' modifies the operand size of the instruction." Ex. 2 ¶251; *see also* Ex. 3 at 226:7-228:11 ("[I]f the [infringement] theory involves the idea of changing operand size relevant to meeting the claims in '777 according to their plain and ordinary meaning, then there should be a written description of operand size somewhere in some form in the '777 patent."). Similarly, he opines that there is not "any disclosure in the 777 patent of a decoration being used to alter the number of bytes that are written to the target memory," which is an aspect of EireOg's infringement theory. Ex. 2 ¶252 (cleaned up). He likewise opines that "the 777 patent

does not provide written description support for a decoration consisting of an instruction prefix or byte enable mask" as is present in the accused products. *Id.* ¶253. His other "written description" theories are likewise rooted in EireOg's infringement theories and therefore examine whether the ***accused products*** are described in the specification, not whether the ***claimed inventions*** are adequately described in the specification. *See* Ex. 1 ¶¶481-489; Ex. 2 ¶¶248-254.

Because Dr. Witchel's "written description" opinions apply an incorrect legal standard, the Court should exclude them, and strike paragraphs 481-489 of his opening report and paragraphs 248-254 of his rebuttal report. His opinions are unreliable, lack relevance to any issue in the case, and would do nothing but confuse a jury and bring prejudice to EireOg. *See, e.g.*, *Personalized Media*, 2013 WL 5962812, at *2.

### B. The Court should exclude Dr. Witchel's opinions that mount an improper "practicing the prior art" defense, comparing prior art to the accused products rather than the patent claims.

The Federal Circuit has unambiguously—and repeatedly—held that "the proper framework for challenging the validity of a patent [under an anticipation theory] is not for the accused to show that it is practicing the prior art, but to show that every element of the patent claims reads on a single reference." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1322-23 (Fed. Cir. 2011); *Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*, 279 F.3d 1357, 1365-69 (Fed. Cir. 2002) ("[T]here is no 'practicing the prior art' defense to literal infringement."). This is because "[i]n both an infringement and an invalidity analysis, the accused product or the prior art is compared to the *construed claim*." *Realtime Data LLC v. EchoStar Corp.*, No. 6:17-cv-00084-JDL, 2018 WL 6271807, at *4 (E.D. Tex. Nov. 29, 2018) (emphasis in original).

All four of Dr. Witchel's anticipation theories improperly rely on a "practicing the prior art" defense, comparing alleged prior art to the accused products, rather than the patent claims. In

his reports, Dr. Witchel admits his anticipation theories, each based on Intel or AMD manuals or products, are all "under EireOg's Infringement Theories." *See, e.g.*, Ex. 1 at 79, 113, 161, 192 (headings). For example, throughout his entire analysis regarding his anticipation theory concerning Intel's 2008 software development manual ("Intel Manual 2008"), he compares the citations in EireOg's infringement contentions to Intel's 2023 software development manual, and then concludes that the asserted claims of the '777 Patent are anticipated. *See id.* ¶¶198-257; Ex. 2 ¶¶166-199. He reaches that conclusion despite the fact that he "do[es] not agree with EireOg's allegation that the [2023 manual] demonstrates infringement of the 777 patent," making clear that his anticipation theory applies only "under EireOg's apparent infringement theories." Ex. 1 ¶199.

Dr. Witchel takes the same approach in the entirety of his analysis of the alleged Intel product art, "Intel Nehalem." *See id.* ¶¶258-335; Ex. 2 ¶¶200-247. And in Appendix C to his opening report, he also provides a chart comparing prior art "Nehalem" source code to accused product "Skylake" source code, further demonstrating he is not comparing Nehalem to the asserted claims, but rather that he is improperly comparing Nehalem to the accused products. Ex. 1 at App'x C. And at his deposition, he confirmed that his Nehalem anticipation theory was rooted in EireOg's infringement theories (Ex. 3 at 210:25-211:18), comparing Nehalem with the accused products rather than the asserted claims, and concluding that Nehalem used some of the same instructions, instruction prefixes, and types of information as the accused products (*id.* at 211:21-213:16). Dr. Witchel takes the same approach with both the "2007 AMD64 Manual" and product prior art "AMD Barcelona." *See* Ex. 1 ¶¶336-480.

Following the Federal Circuit's guidance, courts in this district have expressly rejected Dr. Witchel's approach, and excluded expert testimony that followed his same flawed rubric. For example, in *Realtime Data*, defendants' expert's testimony regarding a prior art product was

excluded because he "(1) identifie[d] features in the Accused Products that [plaintiff's expert] contends reads on that claim element; (2) opine[d] the prior art has features 'analogous' to the features identified by [plaintiff's expert]; and (3) conclude[d] the Asserted Claim must therefore be invalid." 2018 WL 6271807, at *4. Here, as there, the Court should preclude Dr. Witchel's testimony because "[t]his type of analysis is legally flawed and risks possible jury confusion." *Id.*

Similarly, this Court has excluded "evidence or testimony that the accused products do not infringe because they practice the prior art, or which compares prior art to [plaintiff]'s infringement theories." *Core Wireless Licensing SARL v. LG Elecs., Inc.*, No. 2:14-cv-911-JRG-RSP, 2016 WL 4718963, at *3 (E.D. Tex. July 12, 2016). In *Core Wireless*, the Court instructed defendant that it "<u>may not</u> compare an accused product to the prior art for purposes of establishing non-infringement or invalidity," and "<u>may not</u> attempt to affirmatively prove invalidity by arguing [plaintiff]'s infringement theories read on or encompass the prior art." *Id.* (emphases in original). This approach both "avoids jury confusion by focusing the inquiry on the claims," and "comports with Fed. R. Evid. 702, which requires the proponent of expert testimony to show the testimony is relevant and reliable." *Id.*

This and other courts have consistently rejected testimony like that presented here by Dr. Witchel, under similar reasoning as in *Realtime Data* and *Core Wireless*. *See, e.g.*, *Intellectual Ventures II LLC v. FedEx Corp.*, No. 2:16-cv-00980-JRG, 2018 WL 10638138, at *3 (E.D. Tex. Apr. 26, 2018) (granting motion to preclude defendants from comparing the accused instrumentalities to any purported prior art at trial, and "hold[ing] that the only proper comparison is between the accused products and elements of the Asserted Claims"); *Opticurrent, LLC v. Power Integrations, Inc.*, No. 17-cv-03597-WHO, 2018 WL 6727826, at *14-16 (N.D. Cal. Dec. 21, 2018) (excluding any testimony from defense expert comparing prior art and accused products);

*Huawei Tech. Co. v. T-Mobile US, Inc.*, No. 2:16-cv-00052-JRG-RSP, 2017 WL 11638984, at *4 (E.D. Tex. Sept. 29, 2017) (same); *Allegan Sales, LLC v. UCB, Inc.*, No. 2:15-cv-01001-JRG-RSP, 2016 WL 9276265, at *1 (E.D. Tex. Nov. 7, 2016) (same).

Moreover, "Defendants' expert may not propound a theory that he or she considers unreliable (i.e. Plaintiff's infringement theory) in attempting to meet Defendants' burden of proof on the issue of invalidity." *Core Wireless*, 2016 WL 4718963, at *3. "For example, if an expert disagrees with the principles and methods embodied in an adverse party's infringement theory, that expert is not permitted under Rule 702 to apply the adverse party's infringement theory to affirmatively conclude that the patent is invalid." *Genband US LLC v. Metaswitch Networks Corp.*, No. 2:14-cv-33-JRG-RSP, 2015 WL 12911530, at *3 (E.D. Tex. Sept. 30, 2015). That is precisely the approach that Dr. Witchel espouses here—he disagrees with EireOg's infringement theory, but applies that theory in his anticipation analyses to conclude the asserted claims are invalid.

The Court should therefore exclude Dr. Witchel's anticipation opinions concerning the Intel Manual 2008, Intel Nehalem, the 2007 AMD64 Manual, and AMD Barcelona under Rule 702 and *Daubert* as unreliable and irrelevant to any issue in the case, and strike the corresponding portions of Dr. Witchel's reports (paragraphs 198-480 of his opening report, Appendix C to his opening report, and paragraphs 165-247 of his rebuttal report).

### C. The Court should exclude Dr. Witchel's belated *Markman* theories that are unsupported by the intrinsic record.

Three of Dr. Witchel's "non-infringement" rebuttal opinions are nothing more than belated claim constructions theories. To be clear, the opinions addressed in this brief are not fact-based arguments about what falls within the scope of the claim language, but are rather pure construction-based, legal arguments that cannot be permitted to go to a jury under controlling Federal Circuit law. *See, e.g.*, *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361-63 (Fed.

Cir. 2008) ("When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it."); *see also Liquid Dynamics Corp. v. Vaughn Co.*, 449 F.3d 1209, 1229 n.2 (Fed. Cir. 2006) (affirming exclusion of expert testimony based on an impermissible claim construction).

Resolving these issues is straightforward here. Even setting aside that these construction-based theories are being asserted for the first time long after that contemplated by this Court's Docket Control Order (Dkt. No. 77 at 4-5), each is unsupported by the intrinsic record. The Court should thus exclude each of these opinions under Fed. R. Evid. 702 and *Daubert* as unreliable and irrelevant to any issue in the case. *See, e.g.*, *Kaist IP US LLC v. Samsung Elecs. Co.*, No. 2:16-cv-1314-JRG-RSP, 2018 WL 2411772, at *1-2 (E.D. Tex. May 29, 2018) (excluding belated construction raised for the first time in a rebuttal report because it was inconsistent with the specification). The corresponding portions of Dr. Witchel's report should also be stricken, as EireOg would be unduly prejudiced if Defendants could present these unsupportable, legal arguments to the jury. *See, e.g.*, *Anonymous Media Research Holdings, LLC v. Samsung Elecs. Am., Inc.*, No. 2:23-cv-00439-JRG-RSP, 2025 WL 2654103, at *6 (E.D. Tex. Sept. 16, 2025) (striking portions of expert report that "engage[d] in pure claim construction" because "[t]hese are all arguments that should have been presented to the Court during claim construction, rather than to the jury through an expert witness"); *Maxell Ltd. v. Apple, Inc.*, No. 5:19-cv-00036-RWS, 2020 WL 8269548, at *21-23 (E.D. Tex. Nov. 11, 2020) (striking portions of expert reports that advanced new construction theories unsupported by the intrinsic record).

**i. Dr. Witchel's purported requirement that the "memory controller" must perform a function in addition to a "primary function" improperly imports a limitation from examples in the specification.**

Dr. Witchel opines that for there to be infringement of claim 16 of the '777 Patent, the "decorated access instruction" must result in a "decoration operation" that involves the "performance of a function in addition to the primary function of the instruction by the memory controller." Ex. 2 ¶109; *see also id.* ¶252; Ex. 1 ¶483. Put simply, in Dr. Witchel's view, the claimed "decoration operation" must be comprised of ***two operations***. Applying this claim interpretation, he alleges that the accused products do not infringe because the instructions identified by EireOg's expert Dr. Michael Brogioli "are only used to write information to memory" and do not result in any "additional operation" by the memory controller. Ex. 2 ¶¶110, 112, 128, 140; *see also generally id.* ¶¶107-115; Ex. 3 at 46:20-48:8.

In his report, Dr. Witchel fails to explain the basis for his purported "two operations" requirement, instead offering the conclusory opinion that he is "apply[ing] the plain meaning of 'decorated access instruction' in the context of the 777 patent." Ex. 2 ¶108; *see also generally id.* ¶¶107-115. At deposition, he likewise could not provide a citation to any portion of the specification that he relied upon in forming his claim interpretation. Ex. 3 at 55:16-63:18. In any event, the claims and specification of the '777 Patent do not support his interpretation that the "decoration operation" must be comprised of ***two*** operations.

First, claim 16 (the sole asserted independent claim) does not contain any language regarding any "primary" or "additional" functions, or otherwise indicate that its "decoration operation" is comprised of multiple functions or operations. Rather, claim 16 reads in relevant part: "the decorated access instruction is provided to a system interconnect by the interface circuit for ***performance by a memory controller*** of a memory ***of a decoration operation*** specified by the

data processor instruction." Ex. 4 at 17:15-20 (emphases added). In view of the claim language, claim 16's decoration operation could be a single operation or multiple operations—claim 16 does not impose a requirement one way or the other.

Second, it is black letter law that "[a]bsent a clear disavowal in the specification or the prosecution history, the patentee is entitled to the full scope of its claim language." *Thorner v. Sony Comput. Ent. Am. LLC.*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). The Federal Circuit has made clear that it is "not enough that the only embodiments, or all of the embodiments, contain a particular limitation. We do not read limitations from the specification into the claims; we do not redefine words. Only the patentee can do that. To constitute disclaimer, there must be a clear an unmistakable disclaimer." *Id.* at 1366-67.

Dr. Witchel does not point to any lexicography or disclaimer in the intrinsic record to justify narrowing "decoration operation" to require it to be comprised of two operations. Rather, as explained above, both in his report and at his deposition, he provided no explanation for how (or whether) the patent specification supports his claim construction. At most, in his report, he merely points to examples from the '777 Patent where multiple operations are performed. *See* Ex. 2 ¶¶73, 78 (citing Ex. 4 at 2:23-32, 6:53-55); *see also id.* ¶¶142, 252. Indeed, he admits that the portions of the specification he cites merely describe "[e]xamples of decorated instructions." *Id.* ¶73.

Moreover, other portions of the specification describe examples of decorated instructions that are not associated with multiple operations. For example, the specification discloses that Figure 4 discloses an "example format of a decorated access instruction" in which a specific field "holds an instruction operation code (opcode) which identifies what type of operation is associated with the instruction." Ex. 4 at 4:44-51. There is nothing in the description of this embodiment that

indicates the operation described in the quoted portion must in fact be two (or more) operations, rather than a single operation. *See id.* at 4:44-5:23. Rather, the quoted portion, if anything, implies that there is a single opcode and operation in this example.

The Court should exclude Dr. Witchel's "two operations" opinion, and strike paragraphs 109, 110, 112-115, 128, 140, and 252 of his rebuttal report and paragraph 483 of his opening report. His opinion is nothing more than a belated claim construction theory that is unsupported by the intrinsic record. *See, e.g.*, *Anonymous Media*, 2025 WL 2654103, at *6.

**ii. Dr. Witchel's purported requirement that the "memory controller" of the asserted claims must perform an operation that would otherwise be performed by the processor core is likewise unsupported by the intrinsic record.**

In addition to his "two operations" requirement, Dr. Witchel also opines that the claimed "decoration operation" must "result in the memory controller performing an operation that would otherwise be performed by the processor core." Ex. 2 ¶134; *see also id.* ¶138; Ex. 1 ¶483. Applying this purported claim requirement, he concludes that because the Intel processors of the accused products allegedly do not do so, the accused products do not infringe. *See* Ex. 2 ¶¶133-138, 140.

In his report, Dr. Witchel again does not explain the basis for his purported "otherwise performed at the processor core" requirement, but merely opines in conclusory fashion that he is "apply[ing] the plain meaning of 'decoration operation' in the context of the 777 patent." *Id.* ¶132; *see also generally id.* ¶¶131-138. At deposition, despite multiple opportunities, he likewise was unable to provide a citation to any portion of the specification that he relied upon in forming his claim interpretation opinion. Ex. 3 at 84:22-95:7. It also unclear what Dr. Witchel means by "an operation that would otherwise be performed by the processor core," as he does not explain what scenario(s) to which he is comparing the claimed invention. In any event, the intrinsic record does not support his interpretation.

First, claim 16 does not contain any language regarding any "operation that would otherwise be performed by the processor core," let alone that its "decoration operation" must be comprised of such an operation. Rather, as noted above, claim 16 describes the "decoration operation" of the invention as follows: "the decorated access instruction is provided to a system interconnect by the interface circuit for ***performance by a memory controller*** of a memory ***of a decoration operation*** specified by the data processor instruction." Ex. 4 at 17:15-20 (emphases added). The claim does not mention any "operations that would otherwise be performed by the processor core."

Second, Dr. Witchel does not point to any lexicography or disclaimer in the intrinsic record to justify narrowing "decoration operation" to require the memory controller to perform an operation that would otherwise be performed by the processor core. *See Thorner*, 669 F.3d at 1365. Rather, as explained above, in both his non-infringement analysis and at his deposition, he provided no explanation for how (or whether) the patent specification supports his claim construction. At most, in his reports, he describes what he believes to be the "purported performance benefit" of the '777 Patent—"relieving the processor itself of burden" by "moving some of the processing of [atomic] updates from the processor core to the memory controller." Ex. 2 ¶¶71, 142 (citing Ex. 4 at 1:15-16, 1:33-40); Ex. 1 ¶483 (citing Ex. 4 at 1:22-24). Not only do the cited portions of the patent not provide support for Dr. Witchel's benefits theory (there is no disclosure concerning moving processing from one location to another), but they also do not describe any aspects of the invention. Rather, the cited portions provide a background on the prior art. Ex. 4 at 1:11-40 (section entitled "Related Art").

The Court should exclude Dr. Witchel's "otherwise performed by the processor core" opinion, and strike paragraphs 134, 138, 140, and 142 of his rebuttal report and paragraph 483 of

his opening report. His opinion is nothing more than a belated claim construction theory that is unsupported by the intrinsic record. *See, e.g.*, *Anonymous Media*, 2025 WL 2654103, at *6.

**iii. Dr. Witchel's purported requirement that a "decoration value" must be provided to the "memory controller" of the asserted claims improperly imports a limitation from examples in the specification.**

In addition to his "two operations" and "otherwise performed at the processor core" requirements, Dr. Witchel also seeks to inject yet another requirement into claim 16—that a "decoration value" must be provided to the memory controller. Ex. 1 ¶489 ("[A] POSITA reading the 777 patent would not have understood write-combining semantics or cacheable writes resulting in a normal load or store, ***even if not decoration value is provided to the memory controller***, to satisfy the claim requirements" of claim 16.) (emphasis added); *see also id.* ¶481; Ex. 2 ¶¶249, 253. As with the other requirements he seeks to impose on the claims, Dr. Witchel again does not explain the basis for his purported "decoration value" requirement. *See* Ex. 1 ¶¶481, 489; Ex. 2 ¶¶249, 253. At deposition, he could not provide a citation to any portion of the specification that he relied upon in forming this opinion, and likewise could not explain what his alleged "plain and ordinary meaning" is, as related to his purported "decoration value" requirement. Ex. 3 at 216:3-222:23. As with his other litigation-driven interpretations, the intrinsic record does not support his conclusion that the asserted claims require a "decoration value" to be provided to a memory controller.

Rather, claim 16 requires that "the ***decorated access instruction is provided to a system interconnect*** by the interface circuit ***for performance by a memory controller*** of a memory of a decoration operation specified by the data processor instruction." Ex. 4 at 17:15-20 (emphases added). The claim language makes clear that it is the "decorated access instruction" is provided to the claimed "system interconnect" such that the memory controller can perform a "decoration

operation." The claim says nothing about a "decoration value" being provided to the system interconnect or the memory controller.

Second, as with the other purported requirements he seeks to impose on the claims, Dr. Witchel does not point to any lexicography or disclaimer in the intrinsic record to justify narrowing the claims such that a "decoration value" must be provided to the memory controller. *See Thorner*, 669 F.3d at 1365. At most, he cites examples from the specification in which that occurs. *See, e.g.*, Ex. 2 ¶¶73, 78 (citing Ex. 4 at 2:23-32, 6:53-55). Indeed, he admits that the portions of the specification he cites merely describe "[e]xamples of decorated instructions." *Id.* ¶73. He also admits that "decoration information ***may*** include a decoration indicator … and a decoration value," not that decoration information or the claimed "decorated access instruction" must include either or both. *Id.* ¶77 (emphasis added); *see also* Ex. 4 at 6:32-35 (containing similar language).

His admission is also consistent with other portions of the '777 Patent. For example, the specification explains that a "***decoration value or decoration*** is information that is supplied to the memory device for performing decorated operations," making clear that any decoration information provided to the memory controller need not take the form of a "decoration value." Ex. 4 at 2:16-18 (emphasis added). As noted above, this is consistent with the claim language, which requires that a "decorated access instruction," not a "decoration value," is provided to the system interconnect for performance of a decoration operation by a memory controller. *Id.* at 17:15-20.

In addition, in paragraph 253 of his rebuttal report Dr. Witchel points to the embodiment demonstrated by Figure 4 of the '777 Patent. Ex. 2 ¶253. The patent specification makes clear that this embodiment is merely an "example format" of a "decorated access instruction." Ex. 4 at 4:44-56, Fig. 4. And even all instructions in that "example format" do not have a "decoration value"—"[f]or a ***certain type*** of decorated access instruction, register A, RA, holds a decoration

value." *Id.* at 4:53-56 (emphasis added). The patent specification also describes embodiments that do not use a "decoration value," but rather some other type of "decoration indicator." *Id.* at 6:43-47.

The Court should exclude Dr. Witchel's "decoration value" opinion, and strike paragraphs 249 and 253 of his rebuttal report and paragraphs 481 and 489 of his opening report. His opinion is nothing more than a belated claim construction theory that is unsupported by the intrinsic record. *See, e.g.*, *Anonymous Media*, 2025 WL 2654103, at *6.

## III. CONCLUSION

Based on the foregoing, the Court should exclude Dr. Witchel's written description, anticipation, and belated claim construction opinions under Daubert and FRE 702, and strike the corresponding portions of Dr. Witchel's expert reports (paragraphs 198-489 and Appendix C of his opening report and paragraphs 109-110, 112-115, 128, 134, 138, 140, 142, and 165-254 of his rebuttal report).

Dated: December 3, 2025

Respectfully submitted,

By: */s/ Brett E. Cooper*

Brett E. Cooper (NY SBN 4011011)
bcooper@bc-lawgroup.com
Seth Hasenour (TX SBN 24059910)
shasenour@bc-lawgroup.com
Jonathan Yim (NY SBN 5324967)
jyim@bc-lawgroup.com
Drew B. Hollander (NY SBN 5378096)
dhollander@bc-lawgroup.com
Scott E. Kolassa (CA SBN 294732)
skolassa@bclgpc.com
Michael McManus (DC Bar No. 493422)
mmcmanus@bclgpc.com
Amy E. Hayden (CA SBN No. 287026)
ahayden@bclgpc.com
**BC LAW GROUP, P.C.**
200 Madison Avenue, 24th Floor

New York, NY 10016
Phone: 212-951-0100

Amir Alavi
Texas Bar No. 00793239
aalavi@aatriallaw.com
Demetrios Anaipakos
Texas Bar No. 00793258
danaipakos@aatriallaw.com
Scott W. Clark
Texas Bar No. 24007003
sclark@aatriallaw.com
Masood Anjom
Texas Bar No. 24055107
manjom@aatriallaw.com
C. Ryan Pinckney
Texas Bar No. 24067819
rpinckney@aatriallaw.com
Connie Flores Jones
Texas Bar No. 00793736
cfloresjones@aatriallaw.com
**ALAVI & ANAIPAKOS PLLC**
609 Main Street, Suite 3200
Houston, Texas 77002
Telephone: (713) 751-2362
Facsimile: (713) 751-2341

Greg Love
Texas Bar No. 24013060
greg@stecklerlaw.com
**STECKLER WAYNE & LOVE PLLC**
107 East Main Street
Henderson, Texas 75652
Phone: 903/212-4444
Fax: 903/392-2267

Rudolph "Rudy" Fink IV
Texas State Bar No. 24082997
rfink@davisfirm.com
Ty Wilson
Texas State Bar No. 24106583
twilson@davisfirm.com
William E. Davis, III
Texas State Bar No. 24047416
bdavis@davisfirm.com

**DAVIS FIRM PC**
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661

*Attorneys for Plaintiff EireOg Innovations Limited*

**CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that counsel has complied with the meet and confer requirement of Local Rule CV-7(h) and this motion is opposed. The parties conducted a telephonic conference of counsel on December 2, 2025, with counsel for both Plaintiff and each Defendant attending. Discussions have conclusively ended in an impasse, leaving an open issue for the Court to resolve.

*/s/ Brett E. Cooper*
Brett E. Cooper

**CERTIFICATE OF SERVICE**

I hereby certify that the counsel of record are being served on December 3, 2025 with a copy of this document via email.

*/s/ Brett E. Cooper*
Brett E. Cooper

[redacted]

[redacted]