[redacted]

**THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| EIREOG INNOVATIONS LTD.<br>v.<br>CISCO SYSTEMS, INC. | Case No. 2:24-cv-00224-RWS-RSP<br>(Lead Case)<br><br>**JURY TRIAL DEMANDED** |
| EIREOG INNOVATIONS LTD.<br>v.<br>FORTINET, INC. | Case No. 2:24-cv-00225-RWS-RSP<br>(Member Case)<br><br>**JURY TRIAL DEMANDED** |
| EIREOG INNOVATIONS LTD.<br>v.<br>INTERNATIONAL BUSINESS MACHINES CORPORATION | Case No. 2:24-cv-00226-RWS-RSP<br>(Member Case)<br><br>**JURY TRIAL DEMANDED** |

**OPPOSITION OF DEFENDANTS CISCO SYSTEMS, INC., AND FORTINET, INC., TO PLAINTIFF EIREOG INNOVATIONS LTD.'S MOTION TO EXCLUDE CERTAIN OPINIONS OF DR. EMMETT WITCHEL AND TO STRIKE PORTIONS OF HIS EXPERT REPORTS**

[redacted]

## TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. THE ’777 PATENT ........ 2

III. EIREOG’S INFRINGEMENT ALLEGATIONS ........ 3

IV. THE PRIOR ART ........ 5

V. DR. WITCHEL DOES NOT OFFER AN IMPROPER “PRACTICING THE PRIOR ART” OPINION ........ 6

VI. DR. WITCHEL’S WRITTEN DESCRIPTION ANALYSIS IS PROPER ........ 9

VII. DR. WITCHEL DOES NOT ENGAGE IN IMPROPER CLAIM CONSTRUCTION ........ 12

VIII. CONCLUSION ........ 15

[redacted]

# TABLE OF AUTHORITIES


Page(s)

**CASES**

*01 Communique Lab'y, Inc. v. Citrix Sys., Inc.*,
889 F.3d 735 (Fed. Cir. 2018)....................6, 7, 8

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*,
314 F.3d 1313 (Fed. Cir. 2003)....................6

*Anonymous Media Rsch. Holdings, LLC v. Samsung Elecs. Am., Inc.*, No. 2:23-CV-00439-JRG-RSP, 2025 WL 2654103 (E.D. Tex. Sept. 16, 2025)....................8, 14

*Ariad Pharms., Inc. v. Eli Lilly and Co.*,
598 F.3d 1336 (Fed. Cir. 2010)....................10

*Droplets, Inc. v. Yahoo! Inc.*,
No. 12-CV-03733-JST, 2022 WL 2670188 (N.D. Cal. Feb. 28, 2022)....................9

*Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*,
No. 2:15-CV-00011-RSP, 2017 WL 5137401 (E.D. Tex. Nov. 4, 2017)....................14

*GREE, Inc. v. Supercell Oy*, No. 2:19-CV-00200-JRG-RSP,
2021 WL 5154157 (E.D. Tex. Mar. 6, 2021)....................14

*Guangzhou Yucheng Trading Co. v. Dbest Prods., Inc.*,
644 F. Supp. 3d 637 (C.D. Cal. 2022)....................12

*Huawei Techs., Co, Ltd v. Samsung Elecs. Co, Ltd.*,
340 F. Supp. 3d 934 (N.D. Cal. 2018)....................14

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
481 F.3d 1371 (Fed. Cir. 2007)....................7

*Lone Star Tech. Innovations, LLC v. ASUSTek Computer Inc.*,
No. 6:19-CV-00059-RWS, 2021 WL 12137506 (E.D. Tex. May 14, 2021)....................9

*Longhorn HD LLC v. NetScout Sys., Inc.*, No. 2:20-CV-00349-JRG-RSP, 2022 WL 1792904 (E.D. Tex. Mar. 30, 2022)....................8

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
521 F.3d 1351 (Fed. Cir. 2008)....................15

*Paradilis Tech. Licensing, LLC v. Int's Bus. Machs. Corp.,* No. 2:22-cv-0452-JRG-RSP, 2024 WL 4329013 (E.D. Tex. Aug. 5, 2024)....................11

[redacted]

*Peters v. Active Mfg. Co.*,
129 U.S. 530 (1889) .......... 6

*Pictiva Displays Int'l Ltd. v. Samsung Elecs. Co.*, No. 2:23-CV-00495-JRG-RSP,
2025 WL 2969257 (E.D. Tex. Oct. 20, 2025) .......... 14

*Quake v. Lo*,
928 F.3d 1365 (Fed. Cir. 2019) .......... 10

*Realtime Data LLC v. EchoStar Corp.*,
No. 6:17-cv-00084-JDL, 2018 WL 6271807 (E.D. Tex. Nov. 29, 2018) .......... 7

*Rivera v. Int'l Trade Comm'n*,
857 F.3d 1315 (Fed. Cir. 2017) .......... 10, 11

*Solas OLED Ltd. v. Samsung Elecs. Co.*,
No. 2:21-CV-105-JRG-RSP, 2022 WL 1800762 (E.D. Tex. May 30, 2022) .......... 8

*Sterner Lighting, Inc. v. Allied Elec. Supply, Inc.*,
431 F.2d 539 (5th Cir. 1970) .......... 6

*Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*,
279 F.3d 1357 (Fed. Cir. 2002) .......... 7

*United Servs. Auto. Ass'n v. PNC Bank N.A.*,
No. 220CV00319JRGRSP, 2022 WL 1300832 (E.D. Tex. Apr. 29, 2022) .......... 9

*Verizon Servs. Corp. v. Cox Fibernet Va., Inc.*,
602 F.3d 1325 (Fed. Cir. 2010) .......... 14

*White v. Dunbar*,
119 U.S. 47 (1886) .......... 6

*Zenith Elecs. Corp. v. PDI Commc'n Sys., Inc.*,
522 F.3d 1348 (Fed. Cir. 2008) .......... 7

[redacted]

# TABLE OF EXHIBITS

| Ex. | Document |
|---|---|
| 1 | U.S. Patent No. 8,504,777 |
| 2 | Intel® 64 and IA-32 Architectures Software Developer's Manual, Combined Volumes Dec. 2023 (INTEL-EIREOG-000042922) (Excerpt) |
| 3 | U.S. Patent No. 6,205,520 |
| 4 | U.S. Patent No. 6,014,735 |
| 5 | IA-32 Intel Architecture Software Developer's Manual Volume 1: Basic Architecture, 2001 (JTD-EDTX224-000056936) (Excerpt) |
| 6 | Intel® 64 and IA-32 Architectures Software Developer's Manua; Volume 1: Basic Architecture, Nov. 2008 (JTD-EDTX224-000021189) (Excerpt) |
| 7 | Intel® Advanced Vector Extensions Programming Reference, Aug. 2008 (JTD-EDTX224-000024897) (Excerpt) |
| 8 | Intel® 64 and IA-32 Architectures Software Developer's Manual Volume 2A: Instruction Set Reference, A-M, Nov. 2008 (JTD-EDTX224-000021689) (Excerpt) |
| 9 | Amended Opening Expert Report of Emmet Witchel, Ph.D. Regarding the Invalidity of U.S. Patent No. 8,504,777, Nov. 18, 2025 |
| 10 | Rebuttal Expert Report of Emmett Witchel, Ph.D. Regarding Noninfringement of U.S. Patent No. 8,504,777 on Behalf of Defendants Cisco Systems, Inc., Fortinet, Inc. and Palo Alto Networks, Inc., Nov. 7, 2025 |
| 11 | Transcript of the Deposition of Emmett Witchel, Ph.D., Nov. 21, 2025 (Excerpts) |

[redacted]

## I. INTRODUCTION

EireOg's U.S. Patent No. 8,450,777 describes a specific technology to address a specific problem: "decorated access instructions" which use "a memory controller of a memory" to perform "decoration operations" to alleviate delays resulting from multiple microprocessor cores attempting to write to the same memory location at the same time. The accused products do not use "decorated access instructions" and do not use a "memory controller of a memory" to perform "decoration operations." EireOg therefore directs its infringement allegations to entirely unrelated technology – "non-temporal stores" which write information unlikely to be reused directly to memory without storing it in a temporary cache. But non-temporal stores serve a purpose entirely unrelated to the problem described in the '777 patent and were publicly documented and implemented in prior art products long before the '777 patent.

Defendants' technical expert, Dr. Emmett Witchel, explains the contradictions inherent in EireOg's theory in his reports and deposition. Applying the plain and ordinary meaning of the claim language – which has not been construed – Dr. Witchel explains that the accused products do not infringe; that under EireOg's (baseless) theory, the asserted claims are invalid as anticipated because the prior art ***exactly matches*** EireOg's allegations of infringement; and that the specification does not show that the inventors contemplated anything like the accused technology.

Unable to muster any theory under which the asserted claims could be both valid and infringed, EireOg instead seeks to exclude various aspects of Dr. Witchel's opinions for three reasons. Dkt. 189 ("Mot."). EireOg is wrong on each point: (1) his anticipation analysis does not amount to an improper "practicing the prior art defense"; his methodology has been approved by the Federal Circuit in a controlling case EireOg ignores; (2) his written description opinions are properly responsive to EireOg's application of the asserted claims; and (3) he does not engage in

[redacted]

improper claim construction, but instead applies the plain and ordinary meaning of the claims as they would have been understood to a person of ordinary skill in the art in the context of the patent.

## II. THE '777 PATENT

The '777 patent is titled "Data Processor for Processing Decorated Instructions with Cache Bypass," and issued from an application filed September 21, 2010. The patent explains that "[i]n a multiple processor or multiple core data processing system …, multiple counters are used to maintain statistics requiring a variety of functions such as increment, decrement and read-modify-write operations."[1] Ex. 1 ('777 patent) 1:13-16. The patent explains that "delays are created and a significant amount of resources are consumed" when "multiple cores … attempt to update the identical counter at the same time." *Id.* 1:17-19. For "atomic updates, i.e. un-interruptible successive updates," "[c]onventional … mechanisms … can cause system delays."[2] *Id.* 1:23-26.

To address this problem, the patent describes using "intelligent memory," which "includes additional circuitry for performing computations as well as implementing the conventional data storage function that a memory conventionally performs." *Id.* 3:61-64. Intelligent memory can perform "computations … in an atomic fashion meaning that the computations are un-interruptible and are completed prior to allowing a subsequent access request to the memory location being modified by the computation." *Id.* 3:64-4:4. Examples include "increment" (e.g., add 1 to a value) and "decrement" (e.g., subtract 1 from a value). The '777 patent contemplates a data processing system that uses intelligent memory to perform decorated instructions and which may also include conventional memory. *Compare* '777 patent Figs. 1 and 3.

---

[1] The sub-component of a microprocessor that executes instructions and performs computations is sometimes referred to as a processor "core." A single microprocessor may include multiple cores.
[2] A real-world analogy to an atomic update is a bank transfer, which involves reducing the balance of one account and increasing the balance of another account. Until both balance adjustments have been completed, the account balances will be inaccurate; therefore, the account balances should be rendered inaccessible until both are adjusted.

[redacted]

To use the computational capabilities of intelligent memory, the '777 patent describes "decorated" instructions which include a decoration value or decoration; *i.e.*, information "supplied to the memory device for performing decorated operations." *Id.* 2:17-18. The patent explains that a decoration value may be "a command to the memory device to perform a function in addition to a primary function of the executed decorated instruction." *Id.* 2:23-25. Examples of decorated instructions include a decorated load or a decorated store in which the decoration value is "a command to modify the value stored in the target location in some manner." *Id.* 2:26-32. Specifically, the decorated instruction may be "a command to increment or decrement the target location or to multiply the target location data by another operand." *Id.* 2:26-32.

Because a "decorated access instruction … results in a modification of the target location in the memory device by the memory device," the instruction "may result in inaccurate information being stored in the cache."[3] Therefore, "no new cache entry is allocated," and if the cache contains an entry corresponding to the target address of the instruction, it is "invalidated prior to the memory devices completing the function indicated by the decoration value." *Id.* 2:49-67. Consistent with that description, asserted independent claim 16 recites a "data processor" in which a "decorated access instruction is provided to a system interconnect … for performance by a memory controller of a memory of a decoration operation specified by the data processor instruction on a location in the memory designated by the target address" of the instruction. *Id.* cl. 16.

## III. EIREOG'S INFRINGEMENT ALLEGATIONS

EireOg's proffered technical expert, Dr. Michael Brogioli, opines that the Intel processors used in Defendants' accused products satisfy the requirements of the asserted claims based entirely on the functionality of processors supplied by non-party Intel Corporation. Dkt. 204-7 Ex. C. As

[3] A "cache" is relatively small, fast, temporary memory, distinct from main memory, which is relatively large, slow, and used for long-term storage.

[redacted]

shown in the 2023 version of Intel's public Software Developer's Manual that Dr. Brogioli relies on, Intel processors use hundreds of instructions. Ex. 2 (INTEL-EIREOG-000042922 ("Intel Manual 2023")) at -43408-28. Of those instructions, certain memory access instructions are used to handle "non-temporal" data. *Id.* -44239. "Non-temporal" data is generally "not reused in the immediate future," whereas "temporal data" "will be used again." *Id.* -43183. To "make efficient use of the processor's caches, it is generally desirable to cache temporal data and not cache non-temporal data." *Id.* Because it is typically unnecessary to cache non-temporal data, doing so is sometimes referred to as "polluting" caches. *Id.* Therefore, non-temporal instructions do not write to caches. Many Intel processor instructions can be used with instruction "prefixes." Among other functions, instruction prefixes may be used to change the number of bits ("size") of the data ("operand") used with an instruction. For example, the "REX" prefix can change the operand size from 32 bits to 64 bits. *Id.* -43004.

According to Dr. Brogioli, a claimed "decorated access instruction" consists of (1) one of five specific non-temporal instructions (MOVNTI, MOVNTDQ, MOVNTPS, MOVNTPD, and MOVDIRI); (2) in conjunction with one of three instruction prefixes (REX, VEX, and EVEX); (3) when (and only when) the prefix is used to modify the operand size of the instruction. Dkt. 204-7 Ex. C ¶98. And according to Dr. Brogioli, such an instruction results in a claimed "decoration operation" because the use of the prefix to modify the operand size "alter[s] what the write operation would do absent the decorator being present in the access instruction." *Id.* ¶144. Dr. Brogioli does not identify any way in which any instructions result in a memory controller performing any function other than writing information to memory (they do not), or any way in which any instructions are relevant to the purported problem the patent describes of multiple cores attempting to update information in the same location at the same time (they are not).

[redacted]

## IV. THE PRIOR ART

By 2001 (almost ten years before the filing of the application for the ’777 patent), Intel had patented both non-temporal store instructions and instruction prefixes, including “an operand size prefix code.” Ex. 3 (U.S. Patent No. 6,205,520, titled “Method and Apparatus for Implementing Non-temporal Stores”); Ex. 4 (U.S. Patent No. 6,014,735, titled “Instruction Set Extension Using Prefixes”) at 4:56-61. Intel also publicly documented four of the five non-temporal instructions Dr. Brogioli relies on, as well as an instruction prefix used to modify instruction operand sizes, in the 2001 version of its Software Developer’s Manual. Ex. 5 (JTD-EDTX224-000056936) at -56997-98 (Table 3-1), -57057, -57062.

By the time it released the 2008 version of its Software Developer’s Manual (“Intel Manual 2008”), Intel had also implemented and publicly disclosed the REX prefix. Ex. 6 (Intel Manual 2008 Vol. 1 (JTD-EDTX224-000021189)) at -21277. Around the same time, Intel publicly disclosed the VEX prefix in its Advanced Vector Extensions Programming Reference (“Intel AVX Manual 2008”). Ex. 7 (JTD-EDTX224-000024897) at -24987. These disclosures mirror Dr. Brogioli’s infringement analysis. For example, Dr. Brogioli’s excerpt of Intel Manual 2023 explaining the MOVNTI instruction is virtually identical to the explanation in Intel Manual 2008. Dkt. 204-7 Ex. C ¶92 (excerpting Intel Manual 2023 at -44239); Ex. 8 (Intel Manual 2008 Vol. 2A (JTD-EDTX224-000021689)) at -22435.

Among the “processors covered” by Intel Manual 2008 was the Core i7 processor, which implemented Intel’s “Nehalem” microarchitecture. Intel Manual 2008 Vol. 1 at -21212, -21227-28. Intel commercially released Nehalem products by 2009. Ex. 9 (Witchel Op. Rpt.) ¶¶143-147. In addition to the disclosures in Intel Manual 2008 of the instructions and prefixes Dr. Brogioli relies on, Nehalem documentation and source code confirms that Nehalem implemented that functionality. Ex. 9 (Witchel Op. Rpt.) §X(B); Ex. 10 (Witchel Reb. Rpt.) §X(B).

[redacted]

## V. DR. WITCHEL DOES NOT OFFER AN IMPROPER "PRACTICING THE PRIOR ART" OPINION

The Intel processors at issue here do not satisfy the requirements of the asserted claims – not because there is some trivial way in which Intel processors differ slightly from what is claimed, but because they differ completely in fundamental ways – Intel processors simply do not implement the technology described and claimed in the '777 patent. By stretching the claims far beyond anything disclosed in the specification, EireOg says otherwise. But EireOg cannot point to any aspect of its infringement theory that was not squarely disclosed in both public prior art documentation and Intel's Nehalem prior art processors. Because "[t]hat which infringes, if later, would anticipate, if earlier," *Peters v. Active Mfg. Co.*, 129 U.S. 530, 537 (1889), EireOg cannot demonstrate infringement without simultaneously proving the invalidity of the asserted claims.

This is not a controversial proposition. In *01 Communique* – a controlling case that EireOg fails to address – the Federal Circuit explained that an invalidity position premised on a patentee's "overbroad application of its claims" does "***not*** rest on an improper 'practicing the prior art' defense." *01 Communique Lab'y, Inc. v. Citrix Sys., Inc.*, 889 F.3d 735, 743 (Fed. Cir. 2018) (quotation marks omitted; emphasis added). Instead, such a position "correctly recognize[s] that claim terms must be 'construed the same way for both invalidity and infringement.'" *Id.* (quoting *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1330 (Fed. Cir. 2003)). That principle was not newly announced in *01 Communique* (or in *Amgen*), it is foundational: "A patent may not, like a 'nose of wax,' be twisted one way to avoid anticipation and another to find infringement." *Sterner Lighting, Inc. v. Allied Elec. Supply, Inc.*, 431 F.2d 539, 544 (5th Cir. 1970) (quoting *White v. Dunbar*, 119 U.S. 47, 51 (1886)). *See also 01 Communique*, 889 F.3d at 742 (a patentee must "beware of what [it] asks for" because "a broad claim construction for infringement purposes may

[redacted]

ultimately result in a determination of patent invalidity") (quoting in part *Liebel-Flarsheim Co. v. Medrad, Inc.*, 481 F.3d 1371, 1380 (Fed. Cir. 2007) (quotation marks omitted).

The *01 Communique* court also explained that the problem with an improper "practicing the prior art" defense "is that it can … allow a defendant to skirt evidentiary hurdles and conflate the infringement and invalidity inquiries" by "forsak[ing] any comparison between the asserted claims and the accused product, relying instead upon purported similarities between the accused product and the prior art." *01 Communique*, 889 F.3d at 742. Therefore, "an accused infringer cannot defeat a claim of literal infringement or establish invalidity merely by pointing to similarities between an accused product and the prior art." *Id.* at 742-43 (distinguishing *Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*, 279 F.3d 1357, 1365 (Fed. Cir. 2002) and *Zenith Elecs. Corp. v. PDI Commc'n Sys., Inc.*, 522 F.3d 1348, 1363 (Fed. Cir. 2008)).

Dr. Witchel's anticipation analysis comports precisely with the Federal Circuit's guidance. Dr. Witchel did not merely identify prior art "features 'analogous' to the [accused] features." *Realtime Data LLC v. EchoStar Corp.*, No. 6:17-cv-00084-JDL, 2018 WL 6271807, at *4 (E.D. Tex. Nov. 29, 2018). Instead, Dr. Witchel demonstrated – on a limitation-by-limitation basis – that the prior art discloses the ***same*** features (wrongly) alleged to infringe.[4] For each claim requirement, Dr. Witchel identified evidence EireOg (in its infringement contentions) and Dr. Brogioli (in his opening reports) relies on for the contention that the requirement is satisfied. Ex. 9 (Witchel Op. Rpt.) §X(A)-(B); Ex. 10 (Witchel Reb. Rpt.) §X(A)-(B).[5] For each requirement, Dr. Witchel then identified the corresponding disclosures of Intel Manual 2008, Intel

[4] The identity here between the relevant features of the accused products and the prior art also distinguishes Dr. Witchel's analysis from *Uniloc*. Mot. 4.

[5] Because EireOg no longer accuses AMD-based products, Defendants informed EireOg that they do not intend to pursue anticipation based on "2007 AMD64 Manual" and "AMD Barcelona."

[redacted]

AVX Manual 2008, Nehalem source code, and other contemporaneous Nehalem documentation.[6] Ex. 9 (Witchel Op. Rpt.) §X(A)-(B); Ex. 10 (Witchel Reb. Rpt.) §X(A)-(B). Finally, for each requirement, Dr. Witchel concluded that the requirement is satisfied "under EireOg's apparent infringement theories" and "under [Dr. Brogioli's] analysis." Ex. 9 (Witchel Op. Rpt. §X(A)-(B)); Ex. 10 (Witchel Reb. Rpt.) §X(A)-(B). *See 01 Communique*, 889 F.3d at 742-42 ("when an accused product and the prior art are closely aligned, it takes exceptional linguistic dexterity to simultaneously establish infringement and evade invalidity"). Notably, at no point does Dr. Witchel opine that the accused products do not infringe because of the prior art disclosures; rather, he analyzes the evidence on which Dr. Brogioli relies and identifies specific claim requirements that are not satisfied. Witchel Reb. Rpt. §VIII.

Notwithstanding the pre-*01 Communique* cases EireOg cites, this court has repeatedly recognized that the methodology used by Dr. Witchel is proper. *See, e.g.*, *Anonymous Media Rsch. Holdings, LLC v. Samsung Elecs. Am., Inc.*, No. 2:23-CV-00439-JRG-RSP, 2025 WL 2654103, *5 (E.D. Tex. Sept. 16, 2025) (denying motion to strike opinion "that if the … language of the asserted claims is read broadly to cover [the] accused … system, … then that same broad construction will read on the prior art") (quotation marks omitted); *Longhorn HD LLC v. NetScout Sys., Inc.*, No. 2:20-CV-00349-JRG-RSP, 2022 WL 1792904, at *2 (E.D. Tex. Mar. 30, 2022) (denying summary judgment because "invalidity opinions … based on the claim scope as outlined in … infringement contentions … is an acceptable invalidity analysis under *Communique*"); *Solas OLED Ltd. v. Samsung Elecs. Co.*, No. 2:21-CV-105-JRG-RSP, 2022 WL 1800762, *1 (E.D. Tex.

[6] As EireOg notes, Dr. Witchel included in his report "a chart comparing prior art 'Nehalem' source code to accused product 'Skylake' source code." Mot. 5. But EireOg omits Dr. Witchel's explanation that the identified source code "discloses the same functionality as the [accused product] source code" in EireOg's infringement contentions. *E.g.*, Ex. 9 (Witchel Op. Rpt.) ¶297.

[redacted]

May 30, 2022) (denying motion "to strike portions of … invalidity report that compare [the patentee's] infringement contentions to the prior art"); *Lone Star Tech. Innovations, LLC v. ASUSTek Computer Inc.*, No. 6:19-CV-00059-RWS, 2021 WL 12137506, at *4 (E.D. Tex. May 14, 2021) (permitting accused infringer to "argue that applying a claim limitation in a certain way on infringement means that the prior art also meets that claim limitation"); *United Servs. Auto. Ass'n v. PNC Bank N.A.*, No. 220CV00319JRGRSP, 2022 WL 1300832, at *6 (E.D. Tex. Apr. 29, 2022) ("a 'conditional' approach to proving invalidity based on previous statements made by [the patentee] … is an acceptable method of assessing invalidity").[7]

## VI. DR. WITCHEL'S WRITTEN DESCRIPTION ANALYSIS IS PROPER

EireOg is correct that Dr. Witchel's written description opinions are "rooted in EireOg's infringement theories." Mot. 4. Dr. Witchel explains that "under EireOg's apparent interpretation" of the claims as expressed in its infringement contentions, "the asserted claims of the 777 patent are invalid for failure to satisfy the written description requirement." Ex. 9 (Witchel Op. Rpt.) §X(E). And he further explains that "Dr. Brogioli's apparent infringement theories" in his opening reports "confirms that conclusion." Ex. 10 (Witchel Reb. Rpt.) §X(C).

EireOg is incorrect, however, that Dr. Witchel "compar[es] the accused products to the asserted patent specification." Mot. 3. In neither report does Dr. Witchel's written description analysis contain any mention of any accused product. Instead, each of the flaws Dr. Witchel identifies is based on EireOg's and Dr. Brogioli's view of the scope of the claims. For example, in his opening report, Dr. Witchel explains that "[u]nder EireOg's apparent infringement theories, … normal load or store operations satisfy [the] claim requirements, even in the absence of a

---

[7] Other district courts have done the same. *See, e.g.*, *Droplets, Inc. v. Yahoo! Inc.*, No. 12-CV-03733-JST, 2022 WL 2670188, *1 (N.D. Cal. Feb. 28, 2022) ("an accused defendant may … argu[e] that if a claim term must be broadly interpreted to read on an accused device, then this same broad construction will read on the prior art") (quotation marks omitted).

[redacted]

decoration value being provided to the memory controller." Ex. 9 (Witchel Op. Rpt.) ¶481. Dr. Witchel then explains that "the 777 patent makes clear that normal loads and stores are distinct from decoration operations," and "does not disclose any decorated instruction that does not include a 'decoration value.'" *Id.* ¶¶484-87. Similarly, he explains that while Dr. Brogioli contends the claim requirements are satisfied "even though there is no evidence that the REX, VEX, and EVEX prefixes are provided to the memory controller of a memory," "there is no written description support in the specification … for a decorated access instruction whose decoration is not provided to the memory controller of a memory." Ex. 10 (Witchel Reb. Rpt.) ¶249.

Dr. Witchel's analysis is consistent with the basic requirement that claims are treated as having the same scope in the infringement and invalidity analyses. *See supra* §V. It is also consistent with the purpose of the written description requirement, which is "to prevent an applicant from later asserting that he invented that which he did not." *Quake v. Lo*, 928 F.3d 1365, 1373 (Fed. Cir. 2019). The written description must "clearly allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed" based on "an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art." *Ariad Pharms., Inc. v. Eli Lilly and Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc).

Just as EireOg argues "practicing the prior art" with no mention of *01 Communique*, so too it argues written description with no mention of the most instructive Federal Circuit decision, *Rivera v. Int'l Trade Comm'n*, 857 F.3d 1315 (Fed. Cir. 2017). In *Rivera*, the court "analyze[d] the written description issue under the assumption that the asserted claims read on" the accused products, the "salient feature" of which the asserted patent did not "explicitly describe[]." *Rivera,* 857 F.3d at 1319. The court explained that according to the patentee, the specification "teaches a broad genus, which provides written description support for" both "the species shown in the

[redacted]

specification's embodiments" and "the species represented by the accused products." *Id.* 1320. The court rejected that position, citing the "underlying concern addressed by the" asserted patent, a distinction between those species that "permeates the entire patent," the fact that the asserted patent contains "no hint or discussion of" an embodiment including the salient feature of the accused product, the fact that "every embodiment" discloses a particular configuration unlike that of the accused products, and the fact that the "disclosure of the … patent consistently describes an invention" without that salient feature. *Id.* 1320-21. Based on that analysis and the patentee's position "that the asserted claims read on" the accused products, the court affirmed the invalidity of the asserted claims for lack of written description. *Id.* 1323.

Disregarding *Rivera*, EireOg cites *Pardalis Tech. Licensing, LLC v. Int'l Business Machines Corp*. Mot. 2. But in *Pardalis*, the accused infringer "made no argument that a particular species of" the claim "was not appropriately disclosed." *Paradilis Tech. Licensing, LLC v. Int's Bus. Machs. Corp.,* No. 2:22-cv-0452-JRG-RSP, 2024 WL 4329013, at *2 (E.D. Tex. Aug. 5, 2024). Here, Dr. Witchel explains that what ***EireOg and Dr. Brogioli*** contend are species of claim requirements lack written description support – for example, a "decorated instruction that does not include a 'decoration value'" (Ex. 9 (Witchel Op. Rpt.) ¶486), "a decorated access instruction whose decoration is not provided to the memory controller" (Ex. 10 (Witchel Reb. Rpt.) ¶249), and "normal stores" (Ex. 9 (Witchel Op. Rpt.) ¶484; Ex. 10 (Witchel Reb. Rpt.) ¶250). Because (as here) the claim language in *Rivera* had not been construed, the Federal Circuit's analysis was directed to the patentee's argument that the patent "teaches a broad genus, which provides written description support for the species shown in the specification's embodiments … ***and*** the species represented by the accused products." *Rivera,* 857 F.3d at 1320 (emphasis added).

[redacted]

EireOg also cites *Guangzhou Yucheng Trading Co. v. Dbest Prods., Inc*. Mot. 2. But there, the accused infringer "fail[ed] to take into account the Court's construction" of the relevant claim language. 644 F. Supp. 3d 637, 668 (C.D. Cal. 2022). Here, in contrast, the Court has not construed any claim language. Thus, Dr. Witchel's opinions are directed to ***EireOg's and Dr. Brogioli's*** application of the plain meaning of the claims. Dkt 204-8 ¶62 (Dr. Brogioli: "To the extent that any terms were not construed in the present litigation, it is my opinion that those terms have their plain and ordinary meaning as understood by a person of ordinary skill in the art at the time of the filing of the patent.").

Dr. Witchel's written description analysis is consistent with the purpose of the written description requirement and the Federal Circuit's most direct guidance, and it does not implicate the concerns motivating the decisions EireOg relies on. His analysis should not be excluded.

## VII. DR. WITCHEL DOES NOT ENGAGE IN IMPROPER CLAIM CONSTRUCTION

EireOg accuses Dr. Witchel of presenting "construction-based, legal arguments." Mot. 7. Not so. Dr. Witchel's noninfringement analysis consistently applies the plain meaning of the claim language as it would be understood by a person of ordinary skill in the art. His rebuttal report includes a discussion of the technical background relevant to Dr. Brogioli's infringement theory, a detailed description of the specification and prosecution history of the '777 patent, and an analysis of whether the accused products infringe the asserted claims. Ex. 10 (Witchel Reb. Rpt.) §§V, VI, VIII. Dr. Witchel also identifies specific reasons the accused products do not infringe, including that the accused products (1) do not use "decorated access instructions"; and (2) do not perform "decoration operations." Ex. 10 (Witchel Reb. Rpt.) §VIII(A), (C).

For each of those claim requirements, Dr. Witchel analyzes in detail the evidence Dr. Brogioli cites and concludes that the claim language is not satisfied. Ex. 10 (Witchel Reb. Rpt.) §VIII(A), (C). With respect to the claimed "decorated access instructions," Dr. Witchel

[redacted]

compares the accused instructions to the claim language, applying the plain and ordinary meaning of the term in the context of the ’777 patent, while noting that they do not result in a memory controller “perform[ing] an operation that would otherwise be performed by a processor core.” Ex. 10 (Witchel Reb. Rpt.) §VIII(A). Similarly, with respect to the claimed “decoration operation,” he again compares the accused operations to the claim language, applying the plain and ordinary meaning of the term in the context of the ’777 patent, while noting that they “simply write[] information to memory,” do not “result in the memory controller performing an operation that would otherwise be performed by a processor core. Witchel Reb. Rpt. §VIII(C).

At no point does Dr. Witchel rely on any claim construction or “legal argument.”[8] He does not rely on principles such as lexicography, disavowal, or claim differentiation, and does not rely on any distinctions in the prosecution history over prior art. Nor does he opine that the claim language imposes specific unstated ***requirements***; for example, he does not opine that the claims require a memory controller to perform one of the specific computations identified as examples in the specification (e.g., incrementing or decrementing a value). Ex. 10 (Witchel Reb. Rpt.) §VIII(A), (C). Tellingly, in each of EireOg’s descriptions of Dr. Witchel’s opinions as supposedly asserting what claim terms “must” include or perform, the word “must” is not in quotation marks. Mot. 9, 11, 13. “Must” is not Dr. Witchel’s opinion; it is EireOg’s caricature.

The Court has recognized – in a recent case EireOg cites – that noninfringement is distinct from claim construction. The former involves “debating the plain meaning of [claim language] to a person of skill in the relevant art,” whereas the latter involves (for example) “pars[ing] the

[8] EireOg complains that Dr. Witchel did not identify passages of the specification he relied on in forming what EireOg says are his “claim interpretation” and claim “requirement” opinions. Mot. 9-13. But Dr. Witchel does not offer any such opinions; he applies plain and ordinary meaning. When asked about the specification – rather than the scope of the claims – he testified about the patent’s disclosures and examples. *E.g.*, Ex. 11 (Witchel Dep.) 85:19-87:11.

[redacted]

prosecution history, inventor testimony and prior art." *Anonymous Media*, 2025 WL 2654103, at *6.[9] The Court's analysis in *Ericsson* (described in *Anonymous Media*) is instructive:

> Because "interception module" has not been construed, the term has its ordinary meaning. TCL may nevertheless present its noninfringement argument to the jury. In other words, TCL is not precluded from presenting evidence or argument that products do not infringe because …a person of ordinary skill in the art would not view the accused software segment(s) as an "interception module" because the accused code segments are not part of a module. [T]he jury will decide which testimony to credit.

*Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*, No. 2:15-CV-00011-RSP, 2017 WL 5137401, at *9 (E.D. Tex. Nov. 4, 2017) (reversed on unrelated grounds). *See also Verizon Servs. Corp. v. Cox Fibernet Va., Inc.*, 602 F.3d 1325, 1332-34 (Fed. Cir. 2010) (rejecting argument that the patentee "improperly made arguments to the jury about claim scope" because the patentee "did not invite the jury to choose between alternative meanings of technical terms or words of art or to decide the meaning of a particular claim term").

Consistent with this distinction, this Court (like others) routinely permits experts to offer opinions of the sort EireOg challenges. *See, e.g.*, *Pictiva Displays Int'l Ltd. v. Samsung Elecs. Co.*, No. 2:23-CV-00495-JRG-RSP, 2025 WL 2969257, at *4 (E.D. Tex. Oct. 20, 2025) (in denying motion to strike, agreeing that the patentee "confuse[d] expert explanation with claim construction"); *GREE, Inc. v. Supercell Oy*, No. 2:19-CV-00200-JRG-RSP, 2021 WL 5154157, at *2 (E.D. Tex. Mar. 6, 2021) (the challenged expert did "not construe the term" but instead "opine[d] that the accused functionality does not meet the text of the limitation"); *Huawei Techs., Co, Ltd v. Samsung Elecs. Co, Ltd.*, 340 F. Supp. 3d 934, 973 (N.D. Cal. 2018) ("Huawei's

[9] EireOg also cites *Kaist IP US LLC v. Samsung Elecs. Co.* and *Maxell Ltd. v. Apple Inc.*, but both of those decisions were premised on conclusions that the experts' substantive positions were unsupported. Mot. 8 (describing *Kaist* as excluding testimony "inconsistent with the specification" and *Maxell* as striking "theories unsupported by the intrinsic record").

[redacted]

challenge to Dr. Bambos's opinion is not based on an improper claim construction argument. It simply questions the soundness of his conclusions; these attacks can be presented at trial.").

Just as EireOg is wrong that Dr. Witchel's noninfringement opinions constitute claim construction arguments, it is wrong that his opinions are inconsistent with the specification. Because the Court has not construed any claim language, Dr. Witchel applied the plain meaning in the context of the entire patent. Dr. Wichel's application of that claim language is not inconsistent with the specification. For example, EireOg mischaracterizes Dr. Witchel's opinions as offering a claim construction that a "decoration operation" "must be comprised of ***two operations***." But Dr. Witchel offers no such opinion, rather he applied the plain meaning of the asserted claims, which recite both a "decorated access instruction" and a "decoration operation," and concluded that a normal write operation does not satisfy those requirements. The actual opinions offered by Dr. Witchel are not inconsistent with EireOg's cited portions of the specification regarding "examples of decorated [access] instructions," and are consistent with other portions of the specification – which EireOg ignores – describing "decoration operations."

EireOg cites *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361-63 (Fed. Cir. 2008) for the proposition that "[w]hen the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it." Mot. 7-8. But EireOg has not proposed any construction of any claim language, nor has it asked the Court to resolve any claim construction dispute. If the Court were to conclude that any claim construction is required, the parties should be permitted to brief that issue. EireOg's present Motion to Strike Dr. Witchel's infringement analysis is not the appropriate vehicle to resolve any alleged claim construction issue.

## VIII. CONCLUSION

For these reasons, EireOg's Motion should be denied in its entirety.

[redacted]

Dated: December 19, 2025

Respectfully submitted,

/s/ Melissa R. Smith
Melissa R. Smith
State Bar No. 24001351
melissa@gillamsmithlaw.com
**GILLAM & SMITH LLP**
303 South Washington Ave.
Marshall, TX 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

*Counsel for Defendants*

David C. Dotson
dcdotson@duanemorris.com
Matthew C. Gaudet
mcguadet@duanemorris.com
Alice E. Snedeker
asnedeker@duanemorris.com
**DUANE MORRIS LLP**
1075 Peachtree Street, N.E., Suite 1700
Atlanta, Georgia 30309-3929
Telephone: (404) 253-6900
Facsimile: (404) 253-6901

Brianna Vinci
bvinci@duanemorris.com
Richard Hughes
rhughes@duanemorris.com
**DUANE MORRIS LLP**
30 South 17th Street
Philadelphia, PA 19103
Atlanta, Georgia 30309-3929
Telephone: (215) 979-1000
Facsimile: (215) 979-1020

*Counsel for Defendant Fortinet, Inc.*

Joseph J. Mueller (pro hac vice)
joseph.mueller@wilmerhale.com
Dominic E. Massa (pro hac vice) d
dominic.massa@wilmerhale.com
Louis W. Tompros (pro hac vice)
louis.tompros@wilmerhale.com
Sarah R. Frazier (pro hac vice)
sarah.frazier@wilmerhale.com
Jason H. Liss (pro hac vice)
jason.liss@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Phone: (617) 526-6000
Facsimile: (617) 526-5000

Mary (Mindy) V. Sooter (pro hac vice)
Mindy.Sooter@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
1225 Seventeenth St., Suite 2600
Denver, CO 80202
Telephone: (720) 274-3164
Facsimile: (720) 274-3133

S. Dennis Wang
dennis.wang@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
2600 El Camino Real, Suite 400
Palo Alto, CA 94306

[redacted]

Phone: (650) 858-6000
Facsimile: (650) 858-6100

Tamir Packin (pro hac vice)
tpackin@desmaraisllp.com
Kerri-Ann Limbeek (pro hac vice)
klimbeek@desmaraisllp.com
Brian Matty (pro hac vice)
bmatty@desmaraisllp.com
Deborah Mariottini (pro hac vice)
dmariottini@desmaraisllp.com
Jun Tong (pro hac vice)
jtong@desmaraisllp.com
Caitrianne Feddeler (pro hac vice)
cfeddeler@desmaraisllp.com
**DESMARAIS LLP**
230 Park Avenue
New York, NY 10169
Telephone: 212-351-3400
Facsimile: 212-351-3401

*Counsel for Defendants Cisco Systems Inc.*

[redacted]

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on December 19, 2025, the foregoing document was served upon counsel for Plaintiff via e-mail.

*/s/ Melissa R. Smith*

[redacted]

[redacted]