**THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| EIREOG INNOVATIONS LTD.<br>v.<br>CISCO SYSTEMS, INC. | Case No. 2:24-cv-00224-RWS-RSP<br>(Lead Case)<br>**JURY TRIAL DEMANDED** |
| EIREOG INNOVATIONS LTD.<br>v.<br>FORTINET, INC. | Case No. 2:24-cv-00225-RWS-RSP<br>(Member Case)<br>**JURY TRIAL DEMANDED** |
| EIREOG INNOVATIONS LTD.<br>v.<br>INTERNATIONAL BUSINESS MACHINES CORPORATION | Case No. 2:24-cv-00226-RWS-RSP<br>(Member Case)<br>**JURY TRIAL DEMANDED**<br>[redacted] |

**PLAINTIFF EIREOG INNOVATIONS LTD.'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE CERTAIN OPINIONS OF DR. EMMETT WITCHEL AND TO STRIKE PORTIONS OF HIS EXPERT REPORTS**

## I. Dr. Witchel's "anticipation" opinions[1] should be excluded because they are improper "practicing the prior art" defenses.

Defendants claim Dr. Witchel does not mount "practicing the prior art" defenses, relying on the false premise that the prior art and accused products are exactly the same. Opp. 1 ("the prior art ***exactly matches*** EireOg's allegations of infringement"); *id.* 5 (prior art "disclosures mirror Dr. Brogioli's infringement analysis"). Defendants also wrongly claim "Dr. Witchel demonstrated – on a limitation-by-limitation basis – that the prior art discloses the ***same*** features (wrongly) alleged to infringe." *Id.* 7. Dr. Witchel did nothing of the sort. He impermissibly compares evidence cited by EireOg in infringement allegations with evidence related to prior art. Mot. 2-4.

And Dr. Witchel's analysis further reveals the compared features are ***not*** exactly the same. As just one example, claim 16 requires "an interface circuit operative for coupling to a system interconnect" and that "the decorated access instruction is provided to a system interconnect by the interface circuit." Ex.[2] 4 17:5-6, 17:15-19. As Dr. Witchel recognizes, EireOg maps the "system interconnect" to "Ultra Path Interconnect (UPI) in combination with the scalable mesh architecture." Ex. 2 ¶176. But Dr. Witchel does not show the prior art Intel Manual 2008 discloses UPI or the scalable mesh. Rather, he points to disclosures concerning "Intel QuickPath interconnect (QPI)," without any explanation of whether <u>**Q**PI</u> is somehow equivalent to the combination of <u>**U**PI and the scalable mesh</u> in the accused products. And critically, he does not explain how or whether QPI meets the specific requirements of the claimed "system interconnect." *See id.* ¶¶175-176, 194-195; Ex. 1 ¶¶211-216, 244-248. Dr. Witchel presents analogous theories for Intel Nehalem. Ex. 2 ¶¶212-215, 241-242; Ex. 1 ¶¶277-283, 319-326.

Dr. Witchel's analysis makes clear what he and Defendants intend to do at trial is to cherry-

---

[1] Defendants dropped the AMD-based anticipation theories after EireOg's Motion was filed; the only remaining anticipation theories are "Intel Manual 2008" and "Intel Nehalem."

[2] All citations to exhibits are to those of the Hayden Decl. filed with EireOg's Motion.

pick portions of Intel prior art documents, on one hand, and non-prior art Intel documents that EireOg relies on for infringement, on the other, and compare these portions that may appear facially similar "to skirt evidentiary hurdles and conflate the infringement and invalidity inquiries." *01 Communique v. Citrix Sys.*, 889 F.3d 735, 742 (Fed. Cir. 2018). This analysis will prejudice EireOg and cause jury confusion by blurring the lines between infringement and invalidity, which have different burdens of proof. This analysis also ignores that "the proper framework for challenging the validity of a patent" under anticipation is "to show that every element of the patent claim reads on a single reference." *Uniloc v. Microsoft*, 632 F.3d 1292, 1322-23 (Fed. Cir. 2011).

*01 Communique* confirms "an accused infringer cannot defeat a claim of literal infringement or establish invalidity merely by pointing to similarities between an accused product and the prior art," as Dr. Witchel does here. 889 F.3d at 742. In *01 Communique*, defendant did not engage in this type of analysis. Rather, defendant argued the claims were valid and not infringed under what it viewed as the proper application court's claim construction, but if that construction were to be applied more broadly, the prior art invalidated the claims. *Id.* 741-43. There are no similar opinions from Dr. Witchel. Rather, he impermissibly compares accused products and prior art in his anticipation analyses. The other authorities Defendants cite are similarly distinguishable.

## II. Dr. Witchel's "written description" opinions should be excluded because they are nothing other than comparisons of the accused products to the specification.

Defendants cannot identify any claim element Dr. Witchel opines is not supported by the patent disclosure because his "written description" analysis contains no such opinion. Rather, his analysis, like Defendants' brief, is focused on whether "the inventors contemplated anything like the accused technology." Opp. 1; *see* Mot. 2-4.

Defendants claim: "In neither report does Dr. Witchel's written description analysis contain any mention of any accused product." Opp. 9. This statement is demonstrably false, as

reference to accused product features permeates his analysis. For example, he points to what EireOg maps to the "decoration" ("REX, VEX and EVEX prefixes"), states those prefixes "modify [the] operand size," and then opines the written description requirement is not met because "there is no written support in the specification of the 777 patent that an instruction 'decoration' modifies the operand size of the instruction." Ex. 2 ¶251; *see* Ex. 3 226:7-228:11. He has similar analysis for other aspects of the accused products, including "a decoration being used to alter the number of bytes that are written" and "a decoration consisting of an instruction prefix or byte enable mask." Mot. 3-4 (citing Ex. 2 ¶¶252-253). It also appears Dr. Witchel and Defendants intend to disguise his flawed "decoration value" non-infringement theory (*see infra* § IV) as a written description theory, which if permitted would confuse the issues and prejudice EireOg. Opp. 9-10.

*Rivera v. ITC*, 857 F.3d 1315 (Fed. Cir. 2017), which Defendants claim is "the most instructive Federal Circuit decision," is readily distinguishable. Opp. 10. As this Court explained, *Rivera* "focused on whether a particular construction of a term needed to find infringement was supported by the written description. The focus of the court was not on whether the 'full scope' of the claim as informed by the infringement case was supported." *Pardalis Tech. v. IBM*, No. 2:22-cv-0452-JRG-RSP, 2024 WL 4329013, *2 (E.D. Tex. 2024). Here, as was the case in *Pardalis*, Dr. Witchel's analysis "is focused entirely on the lack of disclosure in support of [accused features]. That is not what is claimed and whether it falls within the scope of the claims is a question for the jury, but it is not what the patent is required to disclose." *Id.*

## III. Dr. Witchel's opinions rooted in belated *Markman* theories should be excluded because his theories are unsupported by the intrinsic record.

In its Motion, EireOg pointed out three specific "non-infringement" claim construction-based arguments set forth in Dr. Witchel's reports. Mot. 9-15. Defendants do not attempt to justify Dr. Witchel's strained claim interpretations, or otherwise engage with his theories. Opp. 12-15.

Rather, Defendants simply claim he is not engaging in claim construction at all, but rather is "appl[ying] the plain meaning of the claim language as it would be understood by a person of ordinary skill in the art." *Id.* 12. That Dr. Witchel is "opin[ing] that the claim language imposes specific unstated ***requirements***" (*see id.* 13) is evident from both his reports and testimony, as well as Defendants' brief. Dr. Witchel and Defendants are injecting three unstated requirements into the claims based on nothing more than examples in the specification (*see* Mot. 9-15):

1. *Dr. Witchel's "two operations" requirement.* Dr. Witchel opines the accused products do not meet the "decorated access instruction" limitation because "Dr. Brogioli does not identify any function [of those instructions] in addition to a write or read." Ex. 2 ¶115; *id.* ¶109 ("None of the instructions [identified by Dr. Brogioli] results in the performance of a function in addition to the primary function of the instruction …."). Defendants similarly criticize Dr. Brogioli for "not identify[ing] any way in which any instructions result in a memory controller performing any function other than writing information to memory." Opp. 4. They also admit Dr. Witchel concludes the accused products do not infringe for this reason. *Id.* 13; *see id.* 12.

*2.* *Dr. Witchel's "otherwise performed by a processor core" requirement.* Dr. Witchel opines the accused products do not meet the "decoration operation" limitation because "Dr. Brogioli does not identify any evidence that an Intel memory controller performs an operation … that would otherwise be performed by a processor core." Ex. 2 ¶138; *see id.* ¶134; Opp. 12. Defendants admit Dr. Witchel concludes the accused products do not infringe for this reason. Opp. 12-13.

*3.* *Dr. Witchel's "decoration value" requirement.* Dr. Witchel opines "EireOg and Dr. Brogioli are incorrect" that there can be infringement "in the absence of a decoration value being provided to the memory controller." Ex. 2 ¶249; *id.* ¶253 (criticizing Dr. Brogioli's prefix "decorators" because they "do not have a 'decoration value'"); *see* Ex. 1 ¶¶481, 489. Defendants also rely on

this purported requirement to argue the claims lack written description support. *See* Opp. 11.

None of these three requirements is set forth in the claim language; rather, these purported "requirements" are rooted in examples in the specification, and there is no disclaimer or lexicography indicating the inventor intended to limit his invention to these examples. Mot. 9-15.

The question is not whether Dr. Witchel's positions "are consistent with [examples and] other portions of the specification." Opp. 15. The question is whether there is anything in the specification limiting the claimed invention to the disclosed examples. There is not. *See* Mot. 9-15. And this is true even if "the only embodiments, or all of the embodiments, contain a particular limitation." *Thorner v. Sony*, 669 F.3d 1362, 1366 (Fed. Cir. 2012). This is because "[w]e do not read limitations from the specification into the claims" when understanding what their plain meaning is to a skilled artisan, absent "clear and unmistakable disclaimer" by the patentee. *Id.* 1366-67. But this is exactly what Dr. Witchel and Defendants try to do here to avoid liability.

Defendants' authorities are distinguishable. For example, in *Verizon v. Cox*, the Federal Circuit held the patentee was not engaging in claim construction because it "did not invite the jury to choose between alternative meanings of technical terms or words of art or to decide the meaning of a particular claim term." 602 F.3d 1325, 1332-34 (Fed. Cir. 2010). But that is precisely what Dr. Witchel and Defendants invite the jury to do here. For instance, they intend to ask the jury to decide whether a "decorated access instruction" must result in two operations, instead of just one.

Finally, Defendants claim EireOg has not "asked the Court to resolve any claim construction dispute." Opp. 15. Not so. EireOg makes clear "[t]he Court can readily resolve these claim construction issues on this motion, as each of Dr. Witchel's proposals are unsupported by the intrinsic record." Mot. 1; *id.* 8. No construction (or further briefing) is required. *See Anonymous Media v. Samsung*, No. 2:23-cv-00439-JRG-RSP, 2025 WL 2654103, *6 (E.D. Tex. 2025).

Dated: December 30, 2025

Respectfully submitted,

By: */s/ Brett E. Cooper*

Brett E. Cooper (NY SBN 4011011)
bcooper@bc-lawgroup.com
Seth Hasenour (TX SBN 24059910)
shasenour@bc-lawgroup.com
Jonathan Yim (NY SBN 5324967)
jyim@bc-lawgroup.com
Drew B. Hollander (NY SBN 5378096)
dhollander@bc-lawgroup.com
Scott E. Kolassa (CA SBN 294732)
skolassa@bclgpc.com
Michael McManus (DC Bar No. 493422)
mmcmanus@bclgpc.com
Amy E. Hayden (CA SBN No. 287026)
ahayden@bclgpc.com
**BC LAW GROUP, P.C.**
200 Madison Avenue, 24th Floor
New York, NY 10016
Phone: 212-951-0100

Amir Alavi
Texas Bar No. 00793239
aalavi@aatriallaw.com
Demetrios Anaipakos
Texas Bar No. 00793258
danaipakos@aatriallaw.com
Scott W. Clark
Texas Bar No. 24007003
sclark@aatriallaw.com
Masood Anjom
Texas Bar No. 24055107
manjom@aatriallaw.com
C. Ryan Pinckney
Texas Bar No. 24067819
rpinckney@aatriallaw.com
Connie Flores Jones
Texas Bar No. 00793736
cfloresjones@aatriallaw.com
**ALAVI & ANAIPAKOS PLLC**
609 Main Street, Suite 3200
Houston, Texas 77002
Telephone: (713) 751-2362
Facsimile: (713) 751-2341

Greg Love
Texas Bar No. 24013060
greg@stecklerlaw.com
**STECKLER WAYNE & LOVE PLLC**
107 East Main Street
Henderson, Texas 75652
Phone: 903/212-4444
Fax: 903/392-2267

Rudolph "Rudy" Fink IV
Texas State Bar No. 24082997
rfink@davisfirm.com
Ty Wilson
Texas State Bar No. 24106583
twilson@davisfirm.com
William E. Davis, III
Texas State Bar No. 24047416
bdavis@davisfirm.com
**DAVIS FIRM PC**
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661

*Attorneys for Plaintiff EireOg Innovations Limited*

**CERTIFICATE OF SERVICE**

I hereby certify that the counsel of record are being served on December 30, 2025 with a copy of this document via email.

*/s/ Brett E. Cooper*
Brett E. Cooper

[redacted]

[redacted]