## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

EIREOG INNOVATIONS LTD., §
§
*Plaintiff,* §
§   Case No. 2:24-cv-00224-RWS-RSP
v. §
§
§   (Lead Case)
CISCO SYSTEMS INC., §
§
*Defendant.* §
§

### MEMORANDUM ORDER

Before the Court is Defendant's Motion to Exclude Improper Opinions and Testimony of Mr. Jim Bergman, Plaintiff's damages expert. **Dkt. No. 200**. For the reasons discussed below, the Court finds that Defendant's Motion should be, and hereby is, **DENIED**.

### I.   BACKGROUND

In the instant Case, EireOg has accused certain products of Cisco and the other Defendants that contain Intel and AMD chips of infringing U.S. Patent Nos. 8,504,777 ("the '777 patent"), 9,436,626 ("the '626 patent") and 9,442,870 ("the '870 patent") (together: "asserted patents").[1] *See generally* Dkt. No. 1. The asserted patents are generally directed at managing "virtual divisions" of computer chips, which allow each "partition" to operate as a separate machine.

### II.   LEGAL STANDARD

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

---

[1] U.S. Patent No. 8,117,399 ("the '399 patent"), is no longer asserted in this Case.

1

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme

Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

III.    **ANALYSIS**

A.    **Performance Improvement Inputs**

In the Motion, Defendants argue that Mr. Bergman's "performance benefit" values mistakenly rely on Dr. Brogioli's "fundamentally flawed" technical report. Dkt. No. 200 at 4. Defendants have filed a *Daubert* Motion to strike the same portions of Dr. Brogioli's report.

The Court has declined to strike the challenged portions of Dr. Brogioli's report. Defendants have not raised any further argument to strike these challenged figures. Therefore, the Court **DENIES** Defendants' Motion as to the performance improvement input values.

B.    **Price-Performance Ratio**

Defendants argue that Mr. Bergman's assumption – that a 1% increase in microprocessor performance demands a 1% price increase – is "without any factual basis whatsoever." *Id.* at 5. Defendants challenge the reliability of Mr. Bergman's three cited sources, and note that "none of the sources that he cites disclose or suggest a 1:1 relationship between a processor's performance and its price." *Id.* at 6-7. Defendants add that two sources do not provide any numerical correlation between price and performance. *Id.* at 7. For the third article, Defendant notes that Mr. Bergman did not use it to calculate a 1:1 performance/price ratio. *Id.* Defendant concludes that because this assumption lacks factual underpinning, it should be excluded. *Id.*

In its response, Plaintiff argues that a 1:1 ratio is appropriate because a customer would spend proportionately more to achieve the greater processing power. Dkt. No. 248 at 2. Plaintiff

notes that these three sources support the assumption that "there is a strong positive correlation between processor price and measured performance." *Id.*

The Court finds that Mr. Bergman's 1:1 ratio is sufficiently reliable under *Daubert* for admission. Mr. Bergman's ratio is based on a comparison between processor price and its performance, supported by three sources. The Court does not find persuasive Defendants' attacks on whether Mr. Bergman's 1:1 ratio precisely maps processor price to performance. Mr. Bergman's cited RStudio Analysis found a plausible correlation between processor price and performance. *See* Dkt. No. 200-7. While this data lacks neat 1:1 fit, Mr. Bergman's cited evidence, combined with his economic expertise, indicates a sufficient reliability of his information. Therefore, the Court **DENIES** Defendants' Motion as to Mr. Bergman's 1:1 price to performance ratio.

### C.    Apportionment

Defendants argue that for the '626 and '870 patents, where Plaintiff only asserts method claims, Mr. Bergman fails to apportion out the non-infringing uses of the accused products. Dkt. No. 200 at 9. Defendants cite Mr. Bergman's deposition testimony, where he admits that his report assumes that 100% of users of the accused products use the accused features, and that his report does not attempt to filter out non-infringing use. *Id.*; Dkt. No. 200-1 at 118:4-22 (Bergman Deposition). Defendants argue that the Federal Circuit requires a damage expert to apportion out non-infringing use of the accused apparatus, when calculating damages for an accused process under a method claim. Dkt. No. 10.

Plaintiff argues that Mr. Bergman properly accounted for any non-infringing use and concluded that no such use has been shown to exist. Dkt. No. 248 at 7. Plaintiff argues that Mr. Bergman properly relied on testimony from its technical expert, Dr. Brogioli, who determined that

4

the accused products ship with the accused *feature* enabled. *Id.* at 8. Plaintiff argues that Dr. Brogioli concludes that this circumstantial evidence indicates that the accused products "necessarily infringe." *Id.* Plaintiff distinguishes Defendant's cited caselaw as inapplicable, because none of the accused apparatus "ship[ped] with the accused feature enabled," with an "intended use" that infringes. *Id.* at 9.

The Federal Circuit requires a damages expert assessing method claim infringement damages to apportion out non-infringing use of the accused apparatus. *Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 30 F.4th 1339, 1357 (Fed. Cir. 2022) ("Damages should be apportioned to separate out noninfringing uses, and patentees cannot recover damages based on sales of products with the mere capability to practice the claimed method"). *Niazi* is clearly distinguishable since it involved sales of distinct medical devices, often sold separately, that when used is certain manners could infringe. It was undisputed that these separate devices had many non-infringing uses.

A 100% accused feature use rate alone does not indicate a failure to apportion; it instead indicates a 100% accused feature use rate. While Defendants argue that Mr. Bergman "assumes" this rate, his analysis relies upon the technical analysis of Plaintiff's technical expert, Dr. Brogioli, who concludes the same. *See* Dkt. No. 200-1 at 119:3-6. Defendants' briefing provides no indication that this methodology, which calculated a 100% accused feature use rate, was in any way unreliable or inaccurate. Furthermore, Defendants provide no indication that substantial numbers of users modify the product to remove the infringing features. Therefore, the Court **DENIES** Defendants' Motion as to Mr. Bergman's apportionment analysis.

### D.    Regression

Defendants argue that because Mr. Bergman admitted his regression analysis suffers from "omitted variable bias" it is unreliable, and thus inadmissible under *Daubert*. Dkt. No. 200 at 11.

Defendants note that Mr. Bergman's regression analysis considers data points "unrelated to the relevant processors." *Id.* at 12. Defendants argue that because this fails to "isolate the alleged incremental benefit" of the accused feature, it fails to differentiate between the infringing and non-infringing uses and is thus "not tied to the facts of the case." *Id.* Defendants conclude that even if the reasonable royalty rate calculation does not use this regression analysis, because it is "unreliable and misleading" it "should be excluded in its entirety." *Id.* at 13.

Plaintiff argues that "it is not the law that omitting a variable from a regression analysis renders it automatically unreliable." Dkt. No. 248 at 11 (*Citing Bazemore v. Friday*, 478 U.S. 385, 400 (1986)). Plaintiff notes that in *Bazemore*, the Supreme Court found that "disputes as to which variables to include go to the regression analysis' weight, not admissibility." *Id.* Plaintiff also notes that Mr. Bergman did not use this regression to directly calculate his reasonable royalty rate. *Id.* Instead, he used it to check his theory that a correlation exists between processor price and product pricing. *Id.* at 12.

The Court finds Mr. Bergman's regression analysis to be sufficiently reliable. In *Bazemore*, the Court noted that "it can hardly be said, absent some other infirmity, that an analysis which accounts for the major factors must be considered unacceptable as evidence." 478 U.S. at 400 (internal quotes omitted). The Court also found that a "failure to include variables will affect the analysis' probativeness, not its admissibility." *Id.* Mr. Bergman does not purport to rely on this methodology to calculate his reasonable royalty rate. Instead, he merely uses it to find that processor and product pricing are correlated. Defendants do not identify any other "infirmity" with Mr. Bergman's regression analysis. Thus, Mr. Bergman's inclusion of other "unrelated" variables speaks only to his report's probativeness, not its admissibility. Therefore, the Court **DENIES** Defendant's Motion as to Mr. Bergman's regression analysis.

### E.    Running Royalty

Defendants argue that because NXP, the patent owner at the time of the hypothetical negotiation, "testified under oath that NXP's preference and practice is to enter into lump sum patent license agreements, not running royalty agreements," Mr. Bergman's running royalty analysis should be excluded. Dkt. No. 200 at 13. Defendants note that "each Defendant's witness testified that their companies would have strongly preferred lump sum royalties, and not running royalties." *Id.* Conversely, Defendants note that Mr. Bergman opines that the Parties would be "indifferent" to a running royalty and that "running royalties are often the most appropriate royalty structure." *Id.* at 14. Defendants conclude that Mr. Bergman mistakenly finds "a running royalty is always the most appropriate framework," despite "significantly different considerations" between the two. *Id.* Defendants also argue that for post-trial damages, any attempts to "recharacterize his running royalty as a lump sum should likewise be precluded," because such conversions are "inherently speculative," and thus improper. *Id.*

Plaintiff argues that a "history of lump sum licenses" does not preclude a running royalty award, when "appropriate evidence and reasoning" indicates otherwise. Dkt. No. 248 at 14; *Citing LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 81 (Fed. Cir. 2012). Plaintiff notes that "the structure of the NXP PPA is also akin to running royalty in that NXP can receive payments based on the future performance of the patents." Plaintiff argues that because of this structure, it is appropriate to depart from the Parties' preference for lump sum awards. *Id.* Plaintiff also notes that "Defendants cite no caselaw that would preclude a lump sum from being based on such a per-use calculation with projections into the future," and adds that Mr. Bergman's running royalty calculations do not consider future use, while his lump sum calculation do. *Id.* at 15.

The Court finds Mr. Bergman's running royalty analysis acceptable. *LaserDynamics* requires that the expert provide some factual distinction that explains a departure from the parties' stated preference. Mr. Bergman's report argues that such a departure is proper because NXP's "future performance" model, where the license fee is tied to the patent's real-world performance, is more akin to a running royalty. The Court finds this sufficient to justify his departure.

Finally, Defendants have provided no support for their assertion that precludes an expert from extrapolating a running royalty rate to calculate a lump sum payment for future infringement. While the Court agrees that a post-trial running royalty is speculative because royalties do not accrue until a sale occurs, a lump sum payment necessarily includes future sales, because it is calculated at the time of trial. Therefore, the Court **DENIES** Defendants' Motion as to Mr. Bergman's running royalty and lump sum calculations.

## IV.    CONCLUSION

For the reasons discussed above, the Court finds that Defendants' Motion should be, and hereby is, **DENIED**.

 **SIGNED this 7th day of April, 2026.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE