IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| EIREOG INNOVATIONS LTD., | § | |
| *Plaintiff*, | § | |
| | § | Case No. 2:24-cv-00224-RWS-RSP |
| v. | § | |
| | § | (Lead Case) |
| CISCO SYSTEMS INC., | § | |
| *Defendant*. | § | |
| | § | |

## MEMORANDUM ORDER

Before the Court are Plaintiff EireOg Innovations Ltd.'s Motion to Strike In Part John C. Ale's Expert Report (**Dkt. No. 199**); Defendant Cisco Systems Inc.'s Motion to Exclude the Improper Opinion and Testimony of Eric Chaffee (**Dkt. No. 202**); and Cisco's Motion to Exclude the Improper Opinion and Testimony of Mark Chandler (**Dkt. No. 203**). In the Motions, the Parties seek to strike portions of the respective expert reports that purport to improperly offer opinions of law.

At the final pre-trial conference, the Plaintiff stipulated it will not call Eric Chaffee at trial. *See* Dkt. No. 452 at 5:25-6:7. Therefore, the Court **DENIES AS MOOT** Defendant's Motion to Strike Eric Chaffee (Dkt. No. 202). The Court requested the Parties to narrow the remaining disputed paragraphs of the expert reports, in light of the Court's Report and Recommendation, which narrowed the contract interpretation dispute to three questions. *See* Dkt. No. 435 at 10.[1] Because the Parties' "revenue sharing," *Daingean*, "affiliate" and "alter ego" arguments are no longer at issue, the Court **GRANTS** both motions as to the paragraphs of Mr. Ale and Mr.

---

[1] The remaining three issues are: (1) "Whether infringement litigation, like these suits, is within the scope of EireOg's 'ordinary course of business,'" (2) "To what extent did EireOg exercise control over the seconded AIP IE employees, through promulgated regulations, or the 'request and direction' of their direct report, or any other means to direct the employees," and (3) "whether the asserted patents were directly or indirectly owned, controlled, licensable or in any way enforceable by AIP IE."

1

Chandler's reports that  pertain to these arguments.[2] As discussed below, the Court **GRANTS IN PART** certain portions of Parties' Motions and they are otherwise **DENIED**.

## I. BACKGROUND

In the instant Case, EireOg has accused products of Cisco that contain certain Intel chips of infringing U.S. Patent No. 8,504,777 ("the '777 patent"). See generally Dkt. No. 444. Defendants argue that Intel's membership in RPX grants them a license to use the '777 patent as to the products containing Intel chips, because of EireOg's relationship with its parent companies Atlantic IP US and Atlantic IP Ireland. Dkt. No. 210 at 1.

## II. LEGAL STANDARD

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony

---

[2] As ordered in the final pretrial conference, the Parties each filed stipulations (Dkt. Nos. 448, 453) that listed which expert report paragraphs were withdrawn in light of the Court's Report and Recommendation (Dkt. No. 435).

should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

III.    **ANALYSIS**

A.    **Conclusions of Law**

In his report, Mr. Ale lists two canons of contract interpretation under Delaware law: (1) that interpretation is a question of law "to be resolved by the court," and that "unambiguous"

contract language should "be interpreted based on the plain meaning of the language contained in the contract." Dkt. No. 199-2 at ‖‖ 21-22.

Both portions present unacceptable statements that are within the Court's sole province. "Lawyers may testify as to legal matters when those matters involve questions of fact." *Askanase v. Fatjo*, 130 F.3d 657, 672 (5th Cir. 1997). Here, no facts are present here. Therefore, the Court **STRIKES** ‖‖ 21-22 of Mr. Ale's report. Furthermore, both Parties are **ORDERED** to not offer expert testimony that provides direct recitations of law at trial.

### B. Hypothetical Question of Law

In his report, Mr. Ale opines to the question of "Whether a company can delegate the authority to control, grant rights over, or enforce its rights in specific property to others via contract." *See* Dkt. No. 199-2 at ‖ 3. In its Motion, Plaintiff argues that while Mr. Ale's report opines to general contract law, his "conclusions clearly map to the RPX License and the ultimate issues for the jury," and are thus improper. Dkt. No. 199 at 4. For "delegation," Mr. Ale concludes:

> These transactions do not transfer ownership of the property, real or intangible, which remains in the owner. But depending on the scope, they can provide the entity to which these powers are granted very real control, including the power to enforce rights in the property and to grant others rights to use the property. If the authority granted is broad, then in every real sense of the words, the property is "controlled," rights in it are "enforceable," and the ability to use is "licensable" or "leasable" (depending on the type of property) by the non-owner company granted that authority." Dkt. No. 199-2 at ‖ 120.

For "outsourcing," Mr. Ale concludes:

> As noted above, however, a company is free to delegate broader powers, including the power to control a company's core business. In my experience, such an arrangement would be unusual. Nevertheless, if a company were to delegate authority to conduct its core business activities, including use of and enforcement of rights regarding key assets, that would mean that the company to which authority has been delegated would have the power to control the core business activities and the related assets, all depending on the contractual language. Dkt. No. 199-2 at ‖ 123.

Plaintiff argues that because they implicitly relate to EireOg, these opinions amount to an improper legal conclusion on contract interpretation. Dkt. No. 199 at 4.

4

Defendant argues that Plaintiff cites no authority to support its positions that an expert cannot opine to "parallel factual issues" relevant to the case. Dkt. No. 252 at 6. Instead, Defendant argues that Mr. Ale's testimony applies "his own experience and expertise to help the jury resolve factual issues." *Id.* Defendant notes that the preceding paragraphs Mr. Ale relied upon to reach the challenged conclusion were unchallenged. Dkt. No. 339 at 2.

In *Askanase* the Fifth Circuit found inadmissible expert opinions that opined to the ultimate legal issue – whether a fiduciary duty was breached. *Askanase*, 130 F.3d at 672. The Circuit contrasted *Huddleston v. Herman & MacLean*, where the Circuit found admissible a lawyer-expert's testimony, because it spoke to the effect of contract language on the parties, rather than the meaning of the language itself. 640 F.2d 534, 552 (5th Cir. 1981). Furthermore, an expert may "espouse his opinion on the facts of the case." *Est. of Sowell v. United States*, 198 F.3d 169, 172 (5th Cir. 1999).

The Court finds that Mr. Ale's report improperly answers hypothetical questions about the application of law to facts very similar to those in suit. Like *Askanase*, Mr. Ale's testimony reaches the ultimate issue in the case – whether contract law allows such delegation and outsourcing. Such a conclusion is legal, rather than factual, and under the proper purview of the Court, rather than any expert or the jury. The Court notes that such legal conclusions are not helpful to the jury and may often invite confusion. Given the Court's role to instruct on the law, expert testimony – aimed at the jury – that speaks to what the law is, is improper. Therefore, the Court finds that Plaintiff's Motion should be **GRANTED** as to Mr. Ale's "delegation" and "outsourcing" opinions. Therefore, the Court **STRIKES** ¶¶ 120 and 123 of Mr. Ale's Report. Furthermore, both Parties are **ORDERED** to not offer expert testimony that that opines as to disputed issues of law at trial.

5

### C.      Effect of Contracts

As to whether EireOg's Patents are "Controlled, Licensable, or Enforceable" by Atlantic IP US or Atlantic IP Ireland, Mr. Ale opines that:

> Because the initial shareholder(s) of EireOg effectively were nominees for Atlantic IP, and Atlantic IP continued to manage EireOg, Atlantic IP was in a position to dictate the control, licensing, and enforcement of EireOg's patents even before the Secondment Service Agreement was signed. Dkt. No. 199-2 at ¶ 136.

A lawyer-expert may opine as to the effect of contract terms on the parties, but not as to the meaning of the language itself. *Huddleston*, 640 F.2d at 552. Furthermore, an expert may "espouse his opinion on the facts of the case." *Est. of Sowell v. United States*, 198 F.3d 169, 172 (5th Cir. 1999).

Such opinions should not opine as to what contract law is. Instead, they should address the effect of contract terms on the facts relating to the parties, to determine whether EireOg's patents were licensable by Atlantic IP US or Atlantic IP IE. While this factual testimony takes into account the contract language, it must not opine as to the principles of contract law or contract interpretation. The relevant legal principles must be set out in the Court's jury instructions. Therefore, the Court **DENIES** the Parties' Motions to strike portions of its expert reports that discuss the effects of the contract on the parties, relevant to the three remaining factual questions.

### D.      Subjective Intent

In its Motion, Plaintiff argues that Mr. Ale improperly opines to the "subjective intent" of the RPX License Agreement Parties. Dkt. No. 199 at 10. To support its position, Plaintiff points to several paragraphs of Mr. Ale's report, where his opinions "provided subject matter beyond [his] stated expertise." *Id.* Additionally, Plaintiff argues that Mr. Ale's opinions as to EireOg's Patent Office Power of attorney assignment to Atlantic IP are outside his expertise, because he has "not given any indication that he is competent to testify" to this. *Id.*

Defendant argues that these opinions "fall well within the scope of [Mr. Ale's] undisputed expertise." Dkt. No. 252 at 11. Instead, Defendant contends that Mr. Ale seeks to analyze the "implications of Atlantic IP's stated motivations for forming EireOg." *Id.* Defendant argues that EireOg's cited cases are distinguishable, because Mr. Ale makes no conclusion about Atlantic IP's specific behavior, and instead opines that Atlantic IP's actions are "suggestive of [their] intent." *Id.* Finally, Defendant argues that Mr. Ale's "power of attorney" opinions are proper, because he stays within his expertise to opine that such an assignment is "unusual in these circumstances and further supports his opinions regarding control." *Id.* at 12.

The Court is not persuaded that Mr. Ale's opinions speak beyond his expertise and cover the contracting parties' "subjective intent." Plaintiff relies on *Network-1 Techs., Inc. v. Alcatel-Lucent USA, Inc.*, to argue that an expert may not opine to a party's "subjective state of mind." While *Network-1*, prohibits "speculation" to a party's state of mind, it permits a qualified expert to testify to actions typically taken under certain factual circumstances, so long as it does not "usurp the role of the factfinder." 2017 WL 4173468, at *6 (E.D. Tex. Sept. 21, 2017). *Network-1* notes, however, that an expert may "explain and point to the underlying factual record and other evidence bearing on issues of intent and knowledge." *Id.* While Mr. Ale is prohibited from offering conclusory statements to any party's subjective intent, Plaintiff's cited paragraphs do not opine to any Party's state of mind, nor conclude to any subjective intent. Instead, they opine to the agreement's practical effects, and why *a party* would enter such agreements, or assign powers of attorney. While this speaks to intent, it does not speak to the specific intent of any Party. The latter is prohibited; the former is not. Therefore, the Court finds that Plaintiff's Motion to Strike should be **DENIED** as to Mr. Ale speaking beyond his expertise.

### E.      Factual Background

#### 1.      Ale Report

In its Motion, Plaintiff argues that the Mr. Ale's "Factual Background" section improperly places an expert's gloss on otherwise unhelpful facts. Dkt. No. 199 at 12. Plaintiff argues this section is prejudicial, because it improperly provides expert endorsement to the testimony of non-experts. *Id.*

Federal Rule of Evidence 703 grants experts a broad well of facts to form their opinions. "Expert witness testimony is a widely-recognized exception to the rule against hearsay testimony…An expert's opinion is derived not only from records and data, but from education and from a lifetime of experience. Thus, when the expert witness has consulted numerous sources, and uses that information, together with his own professional knowledge and experience, to arrive at his opinion, that opinion is regarded as evidence in its own right and not as hearsay in disguise. *United States v. Williams*, 447 F.2d 1285, 1290 (5th Cir. 1971). Otherwise inadmissible evidence an expert relies upon may be *disclosed to the jury* "only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." Fed. R. Evid. 703.

Mr. Ale's "factual background" section merely compiles the factual basis he relies upon to form his ultimate opinions. Experts are free to rely on otherwise inadmissible evidence to form their opinions – Rule 703 only applies when a party seeks to introduce the expert's underlying factual basis to the jury. Any dispute as to the factual soundness of an expert's testimony speaks to its weight, not relevance or admissibility. Therefore, the Court finds Plaintiff's "factual background" argument unpersuasive and **DENIES** this portion of Plaintiff's Motion.

### 2.    *Chandler Rebuttal*

The same holds true for Mr. Chandler's reliance on the Atlantic IP IE–RPX Agreement, and Mr. Padian's testimony. Defendant points to several distinctions between the at-issue Atlantic IP US–RPX Agreement, and the Atlantic IP IE–RPX Agreement. Dkt. No. 203 at 6. While Mr. Chandler is not a lawyer, he may rely on relevant contract language to reach his conclusions. Mr. Chandler is not arguing that the Atlantic IP IE–RPX Agreement somehow replaces the Atlantic IP US–RPX Agreement. Instead, he distinguishes the two to rebut Mr. Ale's opinions. Such a rebuttal is not improper.

Defendant argues that Mr. Chandler's rote "recitation" of Gerald Padian's testimony is improper. *Id*. at 9. Defendant argues that because no additional analysis or facts were presented to buttress Mr. Chandler's "Control" definition, and because Mr. Padian is an interested party, Mr. Chandler's reliance is improper. *Id*.

In its reply, Plaintiff points to several facts Mr. Chandler relied on to form his "Control" opinion, in addition to Mr. Padian's testimony. Dkt. No. 243 at 7. Plaintiff adds that no evidence was presented to dispute Mr. Padian's testimony. *Id.* at 6.

The Court finds that Mr. Chandler did not exclusively rely on Mr. Padian's testimony to form his "Control" opinions. His reliance on the contract language and the record indicates that his opinions were formed from his expertise, and that he did not just parrot Mr. Padian.

Any dispute Defendant may have as to this information speaks to the weight of Mr. Chandler's testimony, not its admissibility. Therefore, the Court **DENIES** Defendant's Motion as to Mr. Chandler's reliance on the Atlantic IP IE–RPX Agreement and Mr. Padian's testimony.

9

**F.    Revenue Share, *Daingean*, "Control" and "Alter Ego"**

In the Report and Recommendation on the Parties' license cross motions, the Court recommended granting in part Plaintiff's Motion, and found no license under the purported "affiliate" and "alter ego" theories. *See* Dkt. No. 435. The Court also found *Daingean* inapplicable. *See Id.* In light of this finding, Defendant withdrew the challenged portions of Mr. Ale's report that opine exclusively to these already-decided issues. *See* Dkt. No. 448 at 1. Plaintiff has likewise withdrawn the challenged portions of Mr. Chandler's report that opine exclusively to these already-decided issues. *See* Dkt. No. 453-2. Therefore, the Court finds that these portions of each Parties' Motion to Strike should be **GRANTED**.

Additionally, in light of the Court's Report and Recommendation finding moot the value of EireOg's patents for its license analysis (*See* Dkt. No. 435 at 9 n. 6), the Court **GRANTS** Defendant's Motion to Strike, as to any revenue sharing testimony.

**G.    Fiduciary Duties and Public Policy**

*1.    Fiduciary Duties*

Defendant argues that Mr. Chandler improperly opines to board members fiduciary duties outside his expertise and not discussed in Mr. Ale's report. Dkt. No. 203 at 10. Defendant argues that these paragraphs are (1) improper legal conclusions, (2) "legally irrelevant to the issue of control," and (3) any probative value is outweighed by the risk of prejudice. *Id.* Defendant argues fiduciary duties are not relevant to the issue of control, because Mr. Chandler admits there is "no inconsistency between alleged fiduciary duties and Atlantic IP controlling EireOg." *Id.* at 11.

Plaintiff argues that Mr. Chandler's fiduciary opinions are proper, because they point out a factor Defendant's expert, Mr. Ale, failed to consider in his analysis. Dkt. No. 243 at 8. Plaintiff argues such opinions are proper, because they are relevant when "EireOg's interests differed" from

10

Atlantic IP, and seconded employees are subject to both the secondment agreement to Atlantic IP, and their fiduciary duties as EireOg board members. *Id.* at 10.

The Court finds Mr. Chandler's fiduciary duty arguments allowable. Mr. Chandler is not offering improper legal conclusions, instead, he identifies a legal duty that may exist. Plaintiff argues that conflicting duties may arise between individuals both on EireOg's board and seconded to Atlantic IP. While Mr. Chandler's testimony admits no conflict necessarily exists between "alleged fiduciary duties and Atlantic IP controlling EireOg," this testimony does not consider whether any EireOg *board members seconded to Atlantic IP* face such conflicts. Contrary to Defendant's assertion, fiduciary duty is relevant to the "Control" inquiry. Therefore, the Court **DENIES** Defendant's Motion as to Mr. Chandler's "fiduciary duty" arguments.

### 2.    *Public Policy*

Defendant also argues that Mr. Chandler's "industry" and "public policy" arguments are irrelevant and unfairly prejudicial. *Id.* at 12. Defendant points to 8 pages of Mr. Chandler's report that purport to make public policy arguments in favor of the patent system and protecting inventors. *Id.* at 13. Defendant argues such testimony is unfairly prejudicial, and even prohibited by other courts, because it introduces issues not presented to the jury. *Id.* at 14.

Plaintiff argues that Mr. Ale's testimony that discusses the structure and business model of "patent assertion entities" opens the door to Mr. Chandler's rebuttal. *Id.* at 11. Plaintiff argues that this testimony serves to properly rebut Mr. Ale's "broad, conclusory, and one sided" statements. *Id.* Finally, Plaintiff finds Defendant's cited caselaw inapplicable, because the expert testimony was not offered on rebuttal.

The Court finds that both experts proffered "industry" testimony is overbroad, but not entirely improper. Relevant to the license inquiry is EireOg general business structure, and its

11

relationship with its parent. While the experts are permitted to opine, within their expertise, to relevant *functional* aspects of the industry, EireOg, or related companies, they may not opine to public policy arguments, or the economic effects of EireOg or similar companies. Such testimony is unfairly prejudicial and may risk jury confusion.[3] Therefore, the Court **GRANTS** Defendant's Motion as to any public policy or economic arguments by Mr. Chandler. The Court **DENIES** Defendant's Motion as to relevant functional aspects of the industry, EireOg, or related companies, within Mr. Chandler's expertise.

## IV.    CONCLUSION

Having considered the Parties' Motions, the Court **DENIES AS MOOT** Defendant's Motion to Strike Eric Chaffee (Dkt. No. 202) with respect to Defendant Cisco. Because the Parties' "revenue sharing," *Daingean*, "affiliate" and "alter ego" arguments are no longer at issue, the Court **GRANTS** the paragraphs the Parties seek to strike of Mr. Ale and Mr. Chandler's report the pertain to these arguments. Finally, and as discussed above, the Court **GRANTS** the portions of Parties' Motions that seek to strike conclusions of law, answers to hypothetical questions of law, public policy or economic policy arguments; the Motions are otherwise **DENIED**. The Parties are **ORDERED** to limit their testimony from Mr. Ale and Mr. Chandler to the following topics, within their stated expertise:

- Topics discussed in non-disputed paragraphs.
- EireOg and related companies' underlying business model, corporate structure, management and staffing.

---

[3] The Court notes that EireOg's Motion *in Limine* No. 8, granted by the Court "does not bar Defendants from describing Plaintiff's business as 'asserting patents by licensing or litigation.'"

- Background facts, and factual issues of contract terms that pertain to the underlying license dispute, including the issue of "Control."  Provisions of applicable law relevant to these issues should be requested as portions of the jury instructions.

- Typical and customary actions taken by entities for corporate governance and business operations under specific, relevant, factual circumstances, so long as such testimony does directly opine to any Party's specific intent.

**SIGNED this 15th day of April, 2026.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE

13