**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| EIREOG INNOVATIONS LTD., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:24-CV-224-RWS-RSP |
| | § | *LEAD CASE* |
| CISCO SYSTEMS, INC., | § | |
| | § | |
| Defendant. | § | |

**ORDER**

The above-captioned action was referred to United States Magistrate Judge Roy S. Payne pursuant to 28 U.S.C. § 636(b)(1). Now before the Court are several motions, including (1) Plaintiff EireOg Innovations Ltd.'s Motion for Partial Summary Judgment that Plaintiff Is the Sole Owner of the Asserted Patents (Docket No. 196); (2) EireOg's Motion for Summary Judgment on Defendants' License Defense Based on Certain Agreements (Docket No. 195); (3) EireOg's Motion Under Rule 44.1 for Determination of Irish Law (Docket No. 194); and (4) Defendants Cisco Systems, Inc., International Business Machines Corporations, and Fortinet, Inc.'s Motion for Summary Judgment on Defendants' License to Use the Asserted Patents (Docket No. 210).

**BACKGROUND**

On April 3, 2024, EireOg Innovations Ltd. ("EireOg") filed this lawsuit accusing Defendants of infringing, *inter alia*, U.S. Patent No. 8,504,777 ("the '777 Patent"). *See* Docket No. 1 (Cisco); No 2:24-CV-225 (Fortinet); No. 2:24-CV-226 (IBM). The complaint stems from allegedly infringing computer chips, manufactured by Intel, and installed in Defendants' products. On December 3, 2025, EireOg and Defendants filed several motions regarding Defendants' license defense (Docket Nos. 194–196, 210). The Magistrate Judge granted Plaintiff's License Motion as

to their "affiliate" and "alter ego" license theories but denied the remaining portions of Plaintiff's License Motion (Docket No. 195), along with Defendants' License Motion (Docket No. 210). Docket No. 436. Because the "alter ego" theory was no longer at issue, the Magistrate Judge denied as moot Plaintiff's Rule 44.1 Motion (Docket No. 194). *Id.* The Magistrate Judge also denied Plaintiff's Ownership Motion (Docket No. 196) because its resolution hinged on a disputed factual issue.

## LEGAL STANDARDS

### I.    Standard of Review

When the Court receives objections to a magistrate judge's R&R addressing dispositive motions, the Court conducts a *de novo* review of the objected-to portions. Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(C) (The district judge shall "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.").

### II.    Motion for Summary Judgment

Summary judgment exists, in part, "to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–324 (1986). A court may grant summary judgment when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex*, 477 U.S. at 327. A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enterprises, Inc. v. American Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted). The substantive law identifies which facts are material. *Anderson*, 477 U.S. at 248.

The party moving for summary judgment "always bears the initial responsibility of . . .

demonstrat[ing] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure all of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). The moving party, however, is not required to support its motion with materials negating its opponent's claim where the party in opposition carries the burden of proof at trial. *Celotex*, 477 U.S. at 322–323. Instead, the movant may discharge its burden by showing there is an absence of evidence to support the nonmovant's case. *Id.* at 325; *see also*, *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Where a nonmoving party that carries the burden of proof at trial fails to make a showing sufficient to establish an essential element of its case in response to a motion for summary judgment, "there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323 (citations omitted).

## ANALYSIS

### I.      License

Defendants moved for summary judgment to resolve whether Intel's membership with RPX grants them a license to use the asserted patents as to the products containing Intel chips. Docket No. 210. Defendants raise three independent grounds, each of which, they argue, renders the Asserted Patents covered, and thus licensed, under RPX's agreement with Atlantic IP US. *Id.* at 1. Defendants first argue that because EireOg outsourced the management of EireOg's patents, including the Asserted Patents, to Atlantic IP IE, an affiliate of Atlantic IP US, the Asserted Patents are "controlled, licensable or in any way enforceable" by Atlantic IP and thus covered under the license. *Id.* Defendants' second ground is that EireOg is an "Affiliate" of Atlantic IP US because

it controlled more than 50% of EireOg's board. *Id.* at 1–2. Defendants' third ground is that EireOg itself is covered by the agreement because it is an "alter ego" of Atlantic IP IE and/or Atlantic IP US under Irish law, and piercing EireOg's corporate veil is necessary to prevent injustice. *Id.* at 2.

Plaintiff moved for summary judgment and sought the opposite resolution: that Intel's membership with RPX grants no license to use the asserted patents as to the products containing Intel chips. Docket No. 195. Plaintiff disputed Defendants' three grounds for a license.[1] Plaintiff argued that the terms of the RPX Agreement, and the Secondment Agreements, which second Atlantic IP employees with EireOg, does not grant "control" over EireOg's patents sufficient to implicate the RPX License.

### A.      The Magistrate Judge's Report and Recommendation

On April 6, 2026, the Magistrate Judge issued a Report and Recommendation and recommended that the Court deny Plaintiff's motion as to the "control" theory but grant it as to the "alter ego" and "affiliate" theories. Docket No. 435. The Magistrate Judge denied the entirety of Defendants' motion. *Id.*

As to Defendants' "control" theory, the Magistrate Judge found that there are several unanswered factual questions on "the parameters of EireOg's relationship with AIP IE." *Id.* at 10. The Magistrate Judge concluded that this fact dispute precluded summary judgment over whether the RPX Agreement covers the Asserted Patents under Defendants' "control" theory.

As to Defendants' "affiliate" theory, the Magistrate Judge found that Defendants provided no indication that the existence of "individuals who hold positions of control in both AIP US and EireOg" ultimately results in control of EireOg by Atlantic IP. *Id.* at 11. The Magistrate Judge

---

[1] Plaintiff's Motion also disputed Defendants' remaining two grounds. The Magistrate Judge's Report and Recommendations granted Plaintiff's Motion to these two grounds. Plaintiff has not objected to this portion.

concluded that the RPX Agreement did not cover the Asserted Patents under Defendants' "affiliate" theory.

As to Defendants' "alter ego" theory, the Magistrate Judge found that Atlantic IP's corporate structure does not present the injustice necessary to pierce the corporate veil because the RPX – Atlantic IP US Agreement established no relevant legal obligation that EireOg's corporate structure sought to avoid. *Id.* at 12–13. The Magistrate Judge relied on Defendants' interpretation of Irish caselaw, as permitted under Federal Rule of Civil Procedure 44.1, to conclude that the RPX Agreement did not cover the Asserted Patents under Defendants' "alter ego" theory. *Id.* at 13.

### B.     Plaintiff's Objections

In its objections, Plaintiff argues that Atlantic IP IE cannot, as a "matter of law," have the "legal right to license, enforce, or control the asserted patents." Docket No. 458 at 1. It argues that each of the three terms is impossible to meet. *Id.* Plaintiff argues that the Asserted Patents were not "licensable" by Atlantic IP IE, because "no reasonable jury could find that hiring a company to provide services transfers legal property rights to that company." *Id.* As for the "enforceable" term, Plaintiff argues that "no reasonable jury could find that hiring a company to provide 'litigation support' services cedes patent enforceability rights to that company." *Id.* at 1–2. Plaintiff also disputes Defendants' factual assertions that EireOg files litigation without board permission. *Id.* at 2. Plaintiff concludes that, regardless of board permission, "filing a patent lawsuit without permission is not equivalent to acquiring the legal right to enforce that patent." *Id.* Finally, Plaintiff argues that the Magistrate Judge's Report and Recommendation does not point to any "unique evidence" of "control." *Id.*

Plaintiff's objections lack merit. With respect to Plaintiff's objection to the "licensable" term, Plaintiff mischaracterizes the factual record—the RPX – Atlantic IP US Agreement does not

require transferring legal property rights. Therefore, the Court will not sustain Plaintiff's objection as to the "licensable" term. Plaintiff's "litigation support services" objection is particularly problematic because it implicitly raises a similar argument made in *Daingean* without the requisite factual context. *See Daingean Technologies Ltd. v. T-Mobile USA, Inc.*, 2025 WL 1873055 (E.D. Tex. June 26, 2025). *Daingean*'s holding relied on the unique factual circumstances of the attorney-client relationship to find that the patentee's retained counsel did not hold enforceability rights. Finally, the Court agrees with the Magistrate Judge that an open fact dispute remains over whether the "litigation support" agreement grants Atlantic IP enforcement rights and contributes to "the scope of AIP IE's *control*" over the Asserted Patents. *See* Docket No. 435 at 9 (emphasis added).

In addition to its arguments on the three terms, Plaintiff's objections also argue that the Magistrate Judge failed to consider two issues: (1) "that finding that AIP IE could license, enforce, or control the asserted patents would lead to an absurd result: any company that hires AIP IE to provide services under similar agreements would have its patents captured by the AIP US – RPX Agreement" and (2) the definition of "Patents" under a similar RPX – Atlantic IP IE agreement indicates that Atlantic IP IE cannot "license, enforce, or control[] the asserted patents." Docket No. 458 at 2. The former merely presents the essence of the license dispute. The latter presents language from a contract that is not at issue. Plaintiff cannot bootstrap in contract language from an unrelated agreement.

For the reasons above, the Court declines to sustain Plaintiff's objections.

### C.    Defendants' Objections

Defendants' objections first argue that the Magistrate Judge erred in finding that Atlantic IP lacked the power to license the asserted patents. Docket No. 464 at 4. The Magistrate Judge found that "[a]s to the Parties' License argument, the Investment agreement indicates that licenses

over $5 million require board approval. Therefore, the Court finds that AIP US or AIP IE lacked the power to license the asserted patents." *Id.* (citing Docket No. 435 at 9 n.6). Defendants point to several facts indicating that the Asserted Patents were licensed for less than $5 million and conclude that the Magistrate Judge's Report and Recommendations relied on an incorrect assumption about the Asserted Patents' value. *Id.*

Defendants' objections also argue that the Magistrate Judge erred in finding that no injustice would occur if the corporate veil between Atlantic IP and EireOg was not pierced under Irish law. *Id.* at 7. Defendants point to a clause in the RPX – Atlantic IP US Agreement that purports to prevent Atlantic IP from "weaseling out of its obligations." *Id.* at 8 (citing Docket No. 210-1 at § 3(f)). Defendants argue that this clause indicates the Magistrate Judge erred in finding no legal obligation—and thus injustice—exists. *Id.*

While the Court finds that Defendants' objections have some limited merit, after a *de novo* review the Court ultimately agrees with the Magistrate Judge's Report and Recommendation. Section 3.3 of the Investment Agreement reads:

> Any disposal (including any purchase, sale, transfer, lease, **licensee** or hire purchase) by the Group of **any asset or group of assets, which disposal is material in the context of the Group as a whole** or which is for a consideration or having a value of more than US$5,000,000 other than to the extent that such disposal is specifically forecast or provided for in the Budget for the financial year in which it occurs.

Docket No. 210-29 at ⁋ 3.3 (emphasis added).

The agreement defined the "Group" to include EireOg and its subsidiaries and does not define "material." However, the contract's language and its application to EireOg are not ambiguous. EireOg is an "off the shelf" company designed to acquire and assert patents. *See, e.g.*, Docket No. 195-2 (Padian Tr.) at 96:17-97:5, 138:24–139:4, 297:23–25. No reasonable jury could

find that the Asserted Patents are not material assets to EireOg. Therefore, the Court declines to adopt Defendants' "license" objections.

As to Defendants' "affiliate" theory, the Magistrate Judge was correct to reason that Defendants provided no indication that the existence of "individuals who hold positions of control in both AIP US and EireOg" ultimately results in control of EireOg by Atlantic IP. *See* Docket No. 435 at 11. Even in their objections, Defendants can only cite testimony from *Plaintiff*'s experts to show that, generally, "fiduciary duties ***are not inconsistent with control***." Docket No. 464 at 7 (emphasis in original). But Defendants have not shown that a fiduciary duty *results* in control. What Defendants have cited is insufficient to manufacture a genuine dispute of material fact.

Defendants' "alter ego" objections likewise lack merit. Defendants' cited portions of the license agreement read:

> [N]either Licensor nor any of its Affiliates … participated in, or agreed or planned to participate in, any transaction or series of transactions where a purpose or effect of such transaction(s) is (or was) to avoid, with respect to one or more patents or patent applications, extending to any RPX Licensee and its Affiliates (or any of their Covered Third Parties) the licenses, releases, covenants and other benefits of this Agreement that RPX Licensee and its Affiliates (or any of their Covered Third Parties) **would otherwise have enjoyed** with respect to such patents and patent applications. Furthermore, Licensor shall not, and shall cause its Affiliates not to, participate in, or agree or plan to participate in, any such transaction following the Effective Date.

Docket No. 210-1 at § 3(f) (emphasis added).

The terms of the agreement clearly limit § 3(f) to benefits otherwise enjoyed under the contract, such as patents held by Atlantic IP. Defendants provide no indication that this provision legally obligates Atlantic IP US to license patents held by unaffiliated "portfolio companies." The Court adopted the Magistrate Judge's finding that no license existed under Defendants' "affiliate" theory. Therefore, the Court agrees with the Magistrate Judge's finding that under these factual circumstances, injustice under Irish law requires a corporate structure designed to "avoid a legal

obligation." While EireOg's corporate structure may appear unfair to Defendants, Irish law does not deem it an injustice. Therefore, the Court declines to sustain Defendants' "alter ego" objections.

Therefore, the Court **OVERRULES** Plaintiff's (Docket No. 458) and Defendants' (Docket No. 464) Objections and **ADOPTS** the Magistrate Judge's Report and Recommendation (Docket No. 435) as the opinion of the Court.

## II.    Ownership

Plaintiff moved for summary judgment to resolve "[w]hether EireOg is the owner of the Asserted Patents by having been assigned 'all right, title, and interest' in these patents, such assignments having occurred prior to the filing of the Lead and Member Cases." Docket No. 196 at 1. Plaintiff's motion outlined the facts underlying the transfer of the Asserted Patents from their original inventors to EireOg. *Id.* at 1–4. Plaintiff adds that Defendants "refused" to "stipulate to EireOg's ownership of the Asserted Patents." *Id.* at 4. Defendants argue such a refusal to stipulate is justified because the ongoing license dispute precludes a finding that EireOg possesses "all rights" to the Asserted Patents. Docket No. 255 at 1.

The Magistrate Judge recommended that the Court deny Plaintiff's motion. Docket No. 432. The Magistrate Judge found that, in light of the ongoing licensing dispute (*see* Docket No. 435), "a genuine dispute of material fact remains over whether Plaintiff holds '*all* right, title, and interest' in the asserted patents." Docket No. 432 at 1.

Plaintiff's objections are that because "Defendants conceded they 'do not dispute that . . . EireOg is the direct legal owner of' the Asserted Patents . . . the Court should have granted EireOg's motion, finding, as a matter of law, that it is the sole owner of the Asserted Patents." Docket No. 462 at 1.

Plaintiff's objections lack merit. While Plaintiff's motion is titled "Motion for Partial Summary Judgment That Plaintiff Is the Sole Owner of the Asserted Patents," its contents request the Court to determine that "EireOg is the owner of the Asserted Patents by having been assigned 'all right, title, and interest' in these patents." As the Magistrate Judge correctly identified, the ongoing license dispute precludes the Court from finding no genuine dispute of material fact over whether EireOg has been assigned "*all* right, title, and interest" in the Asserted Patents.[2]

Therefore, the Court **OVERRULES** Plaintiff's Objections (Docket No. 462) and **ADOPTS** the Magistrate Judge's Report and Recommendations (Docket No. 432) as the opinion of the Court.

### III.    Rule 44.1

Defendants argued that one of their license defenses' three bases—the "alter ego" theory—required the Court to evaluate Irish corporate law. In a separate motion, Plaintiff sought under Rule 44.1 the Court's determination of *which* party's interpretation of Irish law controlled as to whether: "(a) the facts demonstrate that a sufficient connection exists between the activities of the entities in question;" and (b) "it is necessary to pierce the corporate veil in order to prevent an injustice."

The Magistrate Judge recommended that the Court deny Defendants' license motion and granted Plaintiff's license motion as to the "alter ego" theory. *See* Docket No. 435. Because the Magistrate Judge found no injustice resulted from the underlying facts, he found that the Court need not reach the disputed issues of Irish law. The Magistrate Judge therefore recommended denying Plaintiff's Rule 44.1 motion as moot.

---

[2] Plaintiff also misstates Defendants' concession. Defendants concede that EireOg is the "direct legal owner" of the Asserted Patents—not the ***sole*** owner of the Asserted Patents.

In its objections to the Magistrate Judge's Report and Recommendation (Docket No. 435), Plaintiff notes that it does not object to the Magistrate Judge's denial of its Rule 44.1 motion as being moot. Docket No. 458 at 1. Defendants filed no objections.

Therefore, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation (Docket No. 435) as to Plaintiff's Rule 44.1 motion.

## CONCLUSION

The Court has conducted a careful *de novo* review of those portions of the Magistrate Judge's proposed findings and recommendations to which the parties objected. *See* 28 U.S.C. § 636(b)(1) (explaining that the district judge shall "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made"). After review, the Court concludes that the Reports and Recommendations of the Magistrate Judge are correct, and the parties' objections are without merit. Accordingly, it is

**ORDERED** that Plaintiff's (Docket Nos. 458, 462) and Defendants' (Docket No. 464) Objections are **OVERRULED**. It is further

**ORDERED** that the Reports and Recommendations of the Magistrate Judge (Docket Nos. 432, 435) are **ADOPTED** as the opinion of the District Court. It is further

**ORDERED** that Plaintiff's Motion for Partial Summary Judgment That Plaintiff Is the Sole Owner of the Asserted Patents (Docket No. 196) is **DENIED**. It is further

**ORDERED** that Plaintiff's Motion for Summary Judgment on Defendants' License Defense Based on Certain Agreements (Docket No. 195) is **GRANTED** as to the claims of "affiliates" and "alter ego," and otherwise **DENIED**. It is further

**ORDERED** that Defendants' Motion for Summary Judgment on Defendants' License to Use the Asserted Patents (Docket No. 210) is **DENIED**. Defendants' previous version of its

Motion for Summary Judgment on Defendants' License to Use the Asserted Patents (Docket No. 208) is **DENIED-AS-MOOT**. It is further

      **ORDERED** that Plaintiff's Motion Under Rule 44.1 for Determination of Irish Law (Docket No. 194) is **DENIED-AS-MOOT**.

      **So ORDERED and SIGNED this 17th day of April, 2026.**

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE