**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| EIREOG INNOVATIONS LTD., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:24-CV-224-RWS-RSP |
| | § | *LEAD CASE* |
| CISCO SYSTEMS, INC., | § | |
| | § | |
| Defendant. | § | |

## ORDER

Before the Court is Defendants Cisco Systems, Inc., Fortinet, Inc., International Business Machines Corporation, and Palo Alto Networks, Inc.'s Motion to Exclude Improper Opinions of Dr. Michael C. Brogioli. Docket No. 204. This case was referred to United States Magistrate Judge Roy S. Payne pursuant to 28 U.S.C. § 636(b)(1). On April 9, 2026, the Magistrate Judge issued a Memorandum Order denying Defendants' motion. Docket No. 450. On April 19, 2026, Defendants Cisco Systems, Inc., Fortinet, Inc., and International Business Machines Corporation filed their objections to the Memorandum Order. Docket No. 491.

## BACKGROUND

Dr. Michael C. Brogioli is a retained expert of Plaintiff EirOg Innovations Ltd. who opines about the technical benefits of U.S. Patent Nos. 8,540,777 ("the '777 Patent"), 9,436,626 ("the '626 Patent"), and 9,442,870 ("the '870 Patent"). On April 9, 2026, the Magistrate Judge entered a Memorandum Order (Docket No. 450), denying Defendants' Motion to Exclude Improper Opinions of Dr. Michael C.  Brogioli (Docket No. 204). Defendants later filed their objections. Docket No. 491. The objections focus on Dr. Brogioli's allegedly unreliable technical benefits analysis based on the "Streaming Load/Store" document and an article by "Tu." Docket No. 491 at 1–5.

1

**LEGAL STANDARD**

When the Court receives objections to a magistrate judge's order addressing non-dispositive motions, the Court reviews the order to determine whether any part of it is clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a) ("The district judge . . . must . . . modify or set aside any part of the [magistrate judge's] order that is clearly erroneous or is contrary to law.").

**ANALYSIS**

I.    **Whether the Magistrate Judge Erred by Not Excluding Dr. Brogioli's Technical Benefit Opinions for the '777 Patent.**

Defendants first object that the Magistrate Judge erred in concluding that " 'EireOg has proffered evidence to show that experts in Dr. Brogioli's field would rely on' the Streaming Load/Store document" because Dr. Brogioli allegedly admitted (1) "he does not know the nature of the project, . . . who created the document, who performed the underlying work, whether any contemporaneous reviewer found the contents to be informative, or whether the results were ever published or presented," (2) "the document does not contain any information relating to any particular computer or computing system," (3) "he does not know whether the work underlying the document was performed using an actual processor or simulator," (4) "if an actual product was used, he does not know any details about it, or if it was a product at issue in this case," and (5) "the document does not contain all the source code used." Docket No. 491 at 2–3 (citing Docket No. 204-26 at 81:4–82:4, 87:9–18, 88:1–20, 89:9–20, 90:25–91:11, 92:4–9, 92:22–93:8).

Defendants next fault the Magistrate Judge for relying on Dr. Brogioli's deposition testimony that he " 'could have' performed testing '[j]ust as the CERN paper did' " because Dr, Brogioli did not perform any testing. *Id.* at 3 (citing Docket No. 450 at 4 (citing Docket No. 259-3 at 372:15–22)). Defendants then complain that the Magistrate Judge's conclusion "that Dr. Brogioli 'sufficiently explain[ed]' why the Streaming Load/Store[] document 'reflects the benefits

2

of only the patented features' " is contrary to law because (1) the "document makes no reference to the '777 Patent," (2) the document "does not indicate whether any of the instruction prefixes . . . were used in the case study[] or . . . whether they were used in the accused mode," (3) the document "provides [no] support for Dr. Brogioli's suggestion that the 'algorithm' referenced in the document is representative," and (4) "Dr. Brogioli admitted that he did not know whether it reflects testing performed on any product . . . in this case." *Id.* at 3–4 (citing Docket No. 204-8 ¶¶ 106–07).

The standard under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592–93 (1993), is not whether an expert knows at his deposition the answer to every question the opposing side can concoct about the authorship and peer review process of a piece of evidence upon which he relies, but whether the expert's testimony is sufficiently reliable and relevant. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391–92 (Fed. Cir. 2003); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249–50 (5th Cir. 2002). The Magistrate Judge correctly concluded that EireOg proffered sufficient evidence to show that experts in Dr. Brogioli's field would rely on the Streaming Load/Store document. Docket No. 450 at 4. The author of the document is available, and it was published by the European Organization for Nuclear Research ("CERN") after presentation. Docket No. 204-9; Brogioli Rep., Docket No. 204-8 ¶ 100. The author of the document worked at Intel, whose products are accused in this lawsuit, before and after working at CERN, and the source code in the document refers to Intel-specific features. Docket No. 204-8 ¶ 100; Docket No. 204-9 at 67733, 67735, 67737–38 ("icc"); Docket No. 259-3 at 281:1–20. In light of this evidence and

3

testimony, the Court concludes that Dr. Brogioli's opinions based on the Streaming Load/Store document are sufficiently reliable under *Daubert*.[1]

Defendants' next objection pulls the Magistrate Judge's reasoning out of the context. The Magistrate Judge's reliance on Dr. Brogioli's statement that he " 'could have' performed testing '[j]ust as the CERN paper did' " was in response to Defendants' argument that Dr. Brogioli's endorsement of his own methodology was circular. Docket No. 294 at 1. The Magistrate Judge acknowledged that, while Dr. Brogioli did not conduct the testing himself, he endorsed the methodology used by the author of the Streaming Load/Store document. Docket No. 450 at 4. This is not equivalent to Dr. Brogioli endorsing his own methodology.

As to Defendants' final objection, the Court is unpersuaded that the Magistrate Judge's conclusion that "Dr. Brogioli sufficiently explains why he believes the 42% figure he used . . . reflects the benefits of only the patented features" is contrary to law. Dr. Brogioli explains that the "non-temporal move instructions" from the Streaming Load/Store document are the same "access instructions" at issue here, and that the decoration instructions confer functionality unrelated to the performance benefits. Docket No. 204-7, Ex. C ¶¶ 12–17, 82, 84–98.

For the foregoing reasons, the Court concludes that the Magistrate Judge's Memorandum Order as to the technical benefits of the '777 Patent is neither clearly erroneous nor contrary to law. Accordingly, the Court **OVERRULES** Defendants' objections to the Magistrate Judge's Memorandum Order with respect to Dr. Brogioli's technical benefits analysis of the '777 Patent.

---

[1] While the Court concludes that Dr. Brogioli's opinions related to the Streaming Load/Store document are sufficiently reliable under *Daubert*, this order leaves open the extent to which Dr. Brogioli may testify about the document at trial and the document's admissibility. If Dr. Brogioli testifies about the document or a party attempts to offer the document into evidence, the Court will consider the admissibility of such testimony and evidence when it is offered, subject to any objections the parties may raise.

**II.**     **Whether the Magistrate Judge Erred by Not Excluding Dr. Brogioli's Technical Benefits Opinions for the '626 and '870 Patents ("Interrupt Patents").**

Defendants object that the Magistrate Judge erred by finding that Dr. Brogioli's performance benefit opinions are sufficiently reliable and relevant because (1) Tu distinguishes its direct interrupt delivery ("DID") from the accused Intel feature, APICv interrupts, (2) Dr. Brogioli does not offer any analysis on how DID is reflected in the Interrupt Patents or how the claimed methods are reflected in Tu, (3) DID "does not appear anywhere in the Interrupt Patents," and (4) "[t]here is no evidence connecting Tu's qualified performance benefits to the accused products." Docket No. 491 at 5.

The Magistrate Judge correctly concluded that Dr. Brogioli's opinions based on the Tu article are sufficiently reliable and relevant. Docket No. 450 at 7. Defendants misunderstand the Magistrate Judge's reasoning. As the Magistrate Judge stated, "[w]hile DID is distinguished from the APICv architecture, Tu . . . explain[s] that DID allows software-based 'hypervising bypassing,' and, as a result, that 'DID can achieve the same . . . goal of minimizing the VM exits or overheads . . . without requiring advanced vendor-specific hardware support,' like Intel's APICv." *Id.* (citing Docket No. 204-16 at 67699, 67701). Minimizing VM exits or overheads is not just a "goal," in the colloquial sense, as Tu and Defendants use it, but the accused feature that results in the performance benefits to which Dr. Brogioli opines. Docket No. 204-8 ¶¶ 108–22.

For the foregoing reasons, the Court concludes that the Magistrate Judge's Memorandum Order as to the technical benefits of the '626 and '870 Patents is neither clearly erroneous nor contrary to law. Accordingly, the Court **OVERRULES** Defendants' objections to the Magistrate Judge's Memorandum Order with respect to Dr. Brogioli's technical benefits analysis of the '626 and '870 Patents.

## CONCLUSION

The Court has conducted a clear error review of those portions of the Magistrate Judge's Memorandum Order to which Defendants objected. *See* 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any [non-dispositive] pretrial matter . . . where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."). After review, the Court concludes that the Memorandum Order of the Magistrate Judge is correct and Defendants' objections lack merit. Accordingly, it is

**ORDERED** that Defendants' objections (Docket No. 491) are **OVERRULED**. It is further

**ORDERED** that the Memorandum Order of the Magistrate Judge (Docket No. 450) is **ADOPTED** as the opinion of the District Court. It is further

**ORDERED** that Defendants Cisco Systems, Inc., Fortinet, Inc., International Business Machines Corporation, and Palo Alto Networks, Inc.'s Motion to Exclude Improper Opinions of Dr. Michael C. Brogioli (Docket No. 204) is **DENIED**.

**So ORDERED and SIGNED this 20th day of April, 2026.**

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE

6