# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| EIREOG INNOVATIONS LTD., | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 2:24-CV-224-RWS-RSP |
| | § | *LEAD CASE* |
| CISCO SYSTEMS, INC., | § § | |
| Defendant. | § § § | |

## ORDER

The above-captioned action was referred to United States Magistrate Judge Roy S. Payne pursuant to 28 U.S.C. § 636(b)(1). Now before the Court are Defendants Cisco Systems, Inc. and Fortinet, Inc.'s Objections to Memorandum Order Denying Motion to Exclude Improper Opinions of Jim Bergman (Docket No. 445). Docket No. 490.

## BACKGROUND

On April 3, 2024, EireOg filed this lawsuit accusing Defendants Cisco and Fortinet of infringing, *inter alia*, U.S. Patent No. 8,504,777 ("the '777 Patent"). *See* Docket No. 1; No 2:24-CV-225 (Fortinet). On December 3, 2025, Defendants filed a Motion to Exclude Improper Opinions and Testimony of Mr. Jim Bergman. Docket No. 200. The motion was fully briefed. Docket Nos. 248, 292, 341. The Magistrate Judge entered an Order denying Defendants' motion. Docket No. 445. On April 18, 2026, Defendants filed objections to the Magistrate Judge's Order. Docket No. 490.

## LEGAL STANDARDS

### I.    Standard of Review

When the Court receives objections to a magistrate judge's order addressing non-dispositive motions, the Court reviews the order to see whether any part of it is clearly erroneous

or contrary to law. Fed. R. Civ. P. 72(a) ("The district judge . . . must . . . modify or set aside any part of the [magistrate judge's] order that is clearly erroneous or is contrary to law.").

## II.    Motion to Strike

Under Federal Rule of Evidence 702, a qualified expert may testify if (1) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (2) the testimony is based on sufficient facts or data; (3) the testimony is the product of reliable principles and methods; and (4) the expert has reliably applied the principles and methods to the facts of the case.

The Federal Rules of Evidence "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 597 (1993). "The relevance prong [of *Daubert*] requires the proponent [of the expert testimony] to demonstrate that the expert's 'reasoning or methodology can be properly applied to the facts in issue.' " *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (quoting *Curtis v. M & S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999)). "The reliability prong mandates that expert opinion 'be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief. ' " *Johnson*, 685 F.3d at 459 (quoting *Curtis*, 174 F.3d at 668).

"The proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." *Johnson*, 685 F.3d at 459 (quoting *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc)). At base, "the question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court." *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015).

## ANALYSIS

Defendants object to the Magistrate Judge's Order on the following grounds.

### I.    Mr. Bergman's Opinions Based on Dr. Brogioli's Opinions

The Court agrees with the Magistrate Judge and Defendants that Mr. Bergman's "performance benefit" values that hinge on Dr. Brogioli's opinions should be excluded if Dr. Brogioli's opinions are excluded. Docket No. 490. Defendants note that they are "separately objecting to the Memorandum Order regarding Dr. Brogioli's opinions." *Id.* Defendants' objections to Dr. Brogioli's opinions were later filed on the docket. Docket No. 491. Because the Court overruled the Defendants' objections to Dr. Brogioli's opinions in a separate order, it does so here as well.

### II.    Price-Performance Ratio

In their objections, Defendants maintain that Mr. Bergman's assumption—that a 1% increase in microprocessor performance demands a 1% increase in price—is plucked out of thin air. *See* Docket No. 490 at 1–3 (citing, e.g., *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1351 (Fed. Cir. 2018)). Not so. Mr. Bergman's opinion is not as unsupported as Defendants make it seem. Docket No. 490 at 2 (This dispute is "about a complete lack of any evidentiary or factual support."). The Magistrate Judge has already stated that "[w]hile this data lacks neat 1:1 fit, Mr. Bergman's cited evidence, combined with his economic expertise, indicates a sufficient reliability of his information." Docket No. 445 at 3 (referencing the three sources Mr. Bergman used at Docket Nos. 200-5–7). The Magistrate Judge concluded that "Mr. Bergman's cited RStudio Analysis [did find] a plausible correlation between processor price and performance." *Id.* (citing Docket No. 200-7).

The Court agrees with the Magistrate Judge. For example, Mr. Bergman testified at his deposition the RStudio data shows that, for higher performance processors, the ratio is actually

"much more than one-to-one." Docket No. 248-3 (Bergman Tr.) at 139:7–9, 147:9–148:7 ("[I]n the data produced in this case, we have chips anywhere from $17 per processor, up to $3,000 per processor[,] [s]o if it's less than one to one at the $17, then, you know, maybe you're adding 4 or $5, or maybe you're off by 2 or $3 on the low end side[;] [b]ut if you're higher than one to one at a $3,000 per unit processor, that's significantly more conservative on the higher end than it is on the lower end."). Indeed, it appears that despite the strong positive correlation and that the ratio is often higher than 1:1, Mr. Bergman attempted to rein in his analysis to a more conservative estimate of 1:1.

Mr. Bergman's analysis and reliance on sources is a far cry from what the expert did in *Exmark*. Docket No. 490 at 1–2 (citing *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1351 (Fed. Cir. 2018) as an example of expert "pluck[ing] 5% royalty rate out of nowhere"). The expert in *Exmark* performed her royalty analysis by reciting each Georgia-Pacific factor and making a conclusory remark without any explanation of how each factor led to a 5% rate. *Id.* at 1349–1351. She mentioned benefits of the accused products with no analysis of how they helped her arrive at the rate. *Id.* at 1349–1350. And she ignored other evidence potentially relevant to her analysis. *Id.* at 1350. Meanwhile, Mr. Bergman provided specific reasons why evidence like the RStudio data led him to conclude a 1:1 ratio between processor performance and price. *See, e.g.*, Docket No. 248-3 (Bergman Tr.) at 138:11–139:23 (explaining, for example, that "the price increases substantially more for smaller performance gains as you get to the higher CPU prices," "as you can even see from this particular [RStudio] graphic here").

Defendants' objections call out the Magistrate Judge for "not address[ing] any controlling Federal Circuit authority." Docket No. 490 at 2. But the Magistrate Judge did not need to because he found that Mr. Bergman's 1:1 ratio was sufficiently reliable and tied to the three cited sources.

*See* Docket No. 445 at 3–4. Besides, the Federal Circuit has plainly recognized that "we have never required absolute precision in th[e] task [of assigning value to a feature that may not have been individually sold]; on the contrary, it is well-understood that this process may involve some degree of approximation and uncertainty." *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1328 (Fed. Cir. 2014); *see also Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 807 F.3d 1283, 1304 (Fed. Cir. 2015) (explaining that estimating a reasonable royalty, "like any reconstruction of the hypothetical world in which the infringer did not actually infringe but negotiated in advance for authority to practice the patents, does not require 'mathematical exactness,' but a 'reasonable approximation' under the circumstances"). By protesting that the evidence does not show a perfect 1:1 ratio, Defendants insist upon a much higher, more stringent standard than what is actually required for experts under Rule 702. Mr. Bergman's analysis is sufficiently reliable to reach the jury.

## III.    Regression Analysis

Defendants' objections regarding Mr. Bergman's regression analysis are also inapposite. Mr. Bergman explains in his report that there is omitted variable bias in his regression analysis, and that while his opinion "is likely overstated" because it "likely captures value attributable to other performance related hardware, unrelated to the relevant processors," it "still provides a relevant data point." Docket No. 200-1 (Bergman Report) at ¶¶ 107–109. Defendants capitalize on this explanation to broadly argue that all expert damages opinions must separate the value of the allegedly infringing features from the value of all other features." Docket No. 490 at 3 (citing *Commonwealth Sci. & Indus. Rsch. Organisation v. Cisco Sys., Inc.*, 809 F.3d 1295, 1301 (Fed. Cir. 2015)). But the issue is not so black-and-white as Cisco frames it. The Court agrees with the Magistrate Judge and Plaintiff that "it is not the law that omitting a variable from a regression analysis renders it automatically unreliable." Docket No. 445 at 6 (citing Docket No. 248 at 11; *Bazemore v. Friday*, 478 U.S. 385, 400 (1986)). And as the Magistrate Judge already emphasized,

the Supreme Court in *Bazemore* explains that a "failure to include variables will affect the analysis' probativeness, not its admissibility." 478 U.S. at 400; *see also id.* (also stating that "it is clear that a regression analysis that includes less than 'all measurable variables' may [still] serve to prove a plaintiff's case."). Finding Mr. Bergman's analysis sufficiently reliable for a jury to evaluate its probativeness, there is no reason to reach Cisco's objections regarding whether a "reasonableness check" can transform an inadmissible opinion into an admissible one.

## IV. Running Royalty and Lump Sum Opinions

Defendants' objections to the Magistrate Judge's order accepting Mr. Bergman's running royalty analysis also lack merit. Docket No. 490 at 5. As Defendants themselves cite, "lump sum payments [] should not support running royalty rates without testimony explaining how they apply to the facts of the case." *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 30 (Fed. Cir. 2012). As long as the expert is able to justify a departure from the parties' past licensing preferences, such an opinion can still be appropriate. *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 81 (Fed. Cir. 2012) ("[W]e do not hold that LaserDynamics' . . . history of lump sum licenses precludes LaserDynamics from obtaining damages in the form of a running royalty."); *see also Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 807 F.3d 1283, 1304 (Fed. Cir. 2015). Mr. Bergman has sufficiently provided reasons for a departure, given that NXP bases its licensing on the "growth or reduction in a licensee's overall financial performance, which is similar to a running royalty structure" and the structure of the NXP PPA is akin to "running royalty in that NXP can receive payments based on the future performance of its patents." Docket No. 200-1 (Bergman Report) at ¶ 321.

Finally, as to Mr. Bergman's lump sum opinions, the Court disagrees that the Magistrate Judge "clearly erred in permitting Mr. Bergman to disguise a post-trial running royalty as a lump sum. Docket No. 490 at 5. What Defendants skirt around in their citation to *Headwater* is that the

court there only struck the expert's running royalty analysis because he only "calculate[ed] a running royalty out beyond the trial date for the full life of the patents" and nothing else. *Headwater Research LLC v. Samsung Elecs. Co., Ltd.*, 2024 WL 4712953 at *4 (E.D. Tex. Nov. 7, 2024). The court stated that a "lump sum royalty analysis must be considered from the perspective [of] the hypothetical negotiation, not performed only on the post-trial sales." *Id.* Consistent with *Headwater*'s language, Mr. Bergman's lump sum analysis is not for post-trial sales only—it includes amounts from the hypothetical negotiation through expiration of the patent. *See, e.g.*, Docket No. 200-12 (Bergman Supplemental Report Errata) at ¶¶ 4–5.

\*     \*     \*

For the reasons above, the Court hereby **OVERRULES** Defendants' objections (Docket No. 490) to the Magistrate Judge's Order (Docket No. 445) with respect to Mr. Bergman.

### CONCLUSION

The Court has conducted a careful review of those portions of the Magistrate Judge's Order to which Defendants objected. Upon such review, the Court hereby determines that Defendants' objections (Docket No. 490) are without merit. The Magistrate Judge's rulings on Defendants' motion to strike Mr. Bergman (Docket No. 445) are not clearly erroneous or contrary to law, and therefore the Court will not set them aside. Accordingly, it is

**ORDERED** that Defendants' objections (Docket No. 490) are **OVERRULED**. It is further

**ORDERED** that Defendants' Motion to Exclude Improper Opinions and Testimony of Mr. Jim Bergman (Docket No. 200) is **DENIED**.

**So ORDERED and SIGNED this 20th day of April, 2026.**

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE